STONE CONTAINER CORPORATION, Plaintiff-Appellant, *v.* INDUSTRIAL
RISK INSURERS *et al.*, Defendants.—(CARRIER CORPORATION *et al.*,
Defendants-Appellees.)

First District (2nd Division)    No. 80-979

Opinion filed December 9, 1980.

Phelan, Pope & John, Ltd., of Chicago (Michael A. Pope and Bradley B. Falkof, of counsel), for appellant.

Wesley S. Walton, Larry Selander, and Weston W. Hanscom, all of Chicago (Keck, Mahin & Cate, of counsel), for appellee Carrier Corporation.

Henry J. Marquard and Kurt Beranek, both of Chicago (Kralovec, Marquard, Doyle, Gibbons & Fraterrigo, Chartered, of counsel), for appellee Tremco Maintenance Service Corporation.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

This appeal is taken from an order dismissing an action, upon application of the doctrine of *forum non conveniens*. Plaintiff Stone Container Corporation (Stone), an Illinois corporation, filed its seven count complaint on August 3, 1978, seeking to recover tort and contract damages sustained in its South Carolina paper mill when a steam turbine generator was destroyed on August 14, 1974. Certain named defendants which did not join in the motion and are not parties to the appeal are Industrial Risk Insurers (IRI), an unincorporated association of 45 insurance companies with regional offices in Chicago, and Marsh & McLennan, Inc. (M&M), a

Delaware corporation, which maintains its principal place of business in Chicago. Defendants-appellees are Carrier Corporation (Carrier), a Delaware corporation, which maintains its principal manufacturing and service facilities in Jeannette, Pennsylvania, and Tremco Maintenance Service Corporation (Tremco), a Delaware corporation, with its principal place of business in Cleveland, Ohio. Stone raises as the principal issue on appeal whether the trial court's construction of the factors supporting Stone's choice of forum were properly interpreted. For the reasons which follow, we reverse.

The status of the litigation in Illinois as it bears on this appeal reveals an attempted removal of the cause by Carrier and Tremco to the United States District Court for the Northern District of Illinois, Eastern Division, which also sought final determination of the cause by that court; however, the cause was remanded to the circuit court of Cook County on January 18, 1979. Thereafter, a series of discovery activities were undertaken by Stone, Carrier and IRI. On October 16, 1979, Stone sought and received leave to file an amended complaint, amending counts I and VII of its original complaint, affecting only IRI.

Neither Carrier nor Tremco has ever filed an answer to the complaint. On December 18, 1979, Carrier nevertheless sought and received leave to file third-party complaints against two other corporations. Carrier sought indemnification from Gimpel Machine Works, Inc. (Gimpel), a Pennsylvania corporation doing business in Illinois, which allegedly designed and manufactured special safety valve and control equipment incorporated in Carrier's turbine generator, and from Atwood & Morrill Company (A&M), a Massachusetts corporation doing business in Illinois, which allegedly designed and manufactured other control equipment incorporated into the turbine generator.

On January 22, 1980, Carrier filed its motion to dismiss pursuant to *forum non conveniens* supported by a memorandum and exhibits, identifying the State of South Carolina as the proper forum to decide the issues, to which Stone responded with a countervailing memorandum and exhibits. Tremco joined in Carrier's motion and participated in the oral argument heard by the trial court. The motion was granted on March 10, 1980, and the action dismissed as to all parties without prejudice to Stone to bring its action "in an appropriate other forum." This appeal followed.

A preliminary understanding of the case, gleaned from the unanswered pleadings, discovery depositions, affidavits and exhibits thus far filed, reveals that on or about August 13, 1974, Tremco, an industrial roof repair company, had been engaged to perform certain maintenance work on the roof of Stone's paper mill in South Carolina. Tremco caused that work to begin, and as a result of alleged negligence in the work performed, rainwater entered the building during a storm, and poured

down onto the electrical switch gear near the steam power turbine generator which was built for Stone by Carrier. Electrical interference developed and the generator sped up. Two safety shutdown devices on the turbine failed to perform their intended functions and the turbine ran out of control and destroyed itself. Further, an extraction check valve failed to operate properly because a water sprinkler system installed at the advice and direction of IRI and M&M interfered with the closing of the valve, which is another instance of claimed negligence. Alternatively, the overspeed trip device installed on the turbine generator by Carrier failed to function properly, the basis for claimed defective design and manufacture, as well as breaches of warranties. As a result of the turbine's destruction, Stone's business was shut down for a period of time, leading to Stone's claim against IRI for business interruption benefits which IRI allegedly wrongfully refused to pay. Other actions involving the above-identified as well as other parties, which are claimed to bear upon the *forum non conveniens* motions made before the trial court, will be discussed later in the opinion.

As has often been postulated by the cases, the doctrine of *forum non conveniens* is predicated upon fundamental fairness in the pursuit of justice and effective judicial administration. When these considerations are applied to a particular fact situation, a court which grants dismissal thereby declines determination of a case although proper jurisdiction over the parties and subject matter have been established. Whether dismissal of an action is warranted by the particular facts presented is primarily within the discretion of the trial court to determine; that decision will not be disturbed unless the facts demonstrate that the court abused its discretion. Unless the balance strongly favors the defendant, however, the plaintiff's choice of forum should rarely be disturbed. *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 109-11, 383 N.E.2d 977, *cert. denied* (1979), 441 U.S. 932, 60 L. Ed. 2d 660, 99 S. Ct. 2052; *Adkins v. Chicago, Rock Island and Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 514, 301 N.E.2d 729, *cert. denied* (1976), 424 U.S. 943, 47 L. Ed. 2d 349, 96 S. Ct. 1411.

A landmark *forum non conveniens* case decided by the United States Supreme Court, *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508-09, 91 L. Ed. 1055, 1062-63, 67 S. Ct. 839, 843, often cited by Illinois courts, and in the present case relied upon by the parties to this appeal, collates the factors to be weighed in considering whether or not a case shall be dismissed under the doctrine. These include: (1) the private interest of the litigant; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (4) the possible view of the premises, if a view is appropriate to the action; and all other practical

problems that make trial of a case easy, expeditious and inexpensive. To be weighed are the relative advantages and obstacles to fair trial. A plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" a defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. Public interest and administrative factors may also be considered, as well as financial burdens incurred by a community foreign to the litigation. In a companion case, *Koster v. Lumbermens Mutual Casualty Co.* (1947), 330 U.S. 518, 525, 91 L. Ed. 1067, 1074, 67 S. Ct. 828, 832, the supreme court noted, "While, even in the ordinary action, the residence of the suitor will not fix the proper forum without reference to other considerations, it is a fact of 'high significance.' *International Milling Co. v. Columbia Transportation Co.*, 292 U.S. 511, 520."

Stone contends that the trial court abused its discretion in granting Carrier's[1] motion because Stone is an Illinois corporation which chose to bring this litigation in its home forum and because relevant connections exist between this forum and the litigation. Those relevant connections are said to include the fact that: the business interruption insurance policy was negotiated with IRI and signed in Chicago, where IRI's regional offices are located; IRI's personnel in Chicago proposed loss prevention surveys for minimization of property loss due to fire and related hazards for the South Carolina paper mill; prints and calculations for the defectively designed sprinkler system were reviewed and approved by IRI personnel in Chicago; IRI approved and inspected the installed sprinkler system, which is alleged to have interfered with the operation of the plant's turbine generator, in reports which were issued from IRI's Chicago offices; M&M's account engineers in Chicago, where it maintains its principal place of business, required a revised sprinkler system to be designed and submitted after it was previously rejected; M&M's Chicago consultants periodically reviewed reports prepared by IRI for Stone's South Carolina plant; certain communications concerning the need for a sprinkler system in that plant, as well as review of and approval and authorization for that system, originated from M&M's Chicago office; Carrier maintains its principal manufacturing and service facilities in Jeannette, Pennsylvania; and extensive negotiations concerning repair or replacement of the damaged turbine generator took place between Carrier personnel located in Jeannette and Stone and Zurich Insurance Company personnel in Chicago. From these relevant connections, and in light of the deference to be accorded to an Illinois resident's choice of Illinois as the forum for the litigation, Stone concludes that it has demonstrated a

---

[1] Tremco has joined in Carrier's brief and argument. We shall refer to the argument as Carrier's, with the understanding that the same is also Tremco's argument. Tremco has also filed a brief, to which reference will be made separately.

strong basis upon which the motion should have been denied, ·citing *American Home Assurance Co. v. Northwest Industries, Inc.* (1977), 50 Ill. App. 3d 807, 813, 365 N.E.2d 956, *appeal denied* (1977), 66 Ill. 2d 637, and *Sears, Roebuck & Co. v. Continental Insurance Co.* (1972), 9 Ill. App. 3d 287, 290, 292 N.E.2d 75.

■■ Carrier maintains that the relevant connections test does not preempt other factors to be considered; rather, concurrent disadvantages in trying the case in the forum considerably outweigh any such connections, citing *Giseburt v. Chicago Burlington & Quincy R.R.* (1964), 45 Ill. App. 2d 262, 195 N.E.2d 746. The facts in *Giseburt* reveal, however, that no relevant connection existed in that case whatsoever. Giseburt was a Missouri resident; the accident occurred in Missouri; no witness resided in Illinois, where the case was tried; the trial of the case and depositions utilized during the trial were conducted by Missouri lawyers; the accident involved an allegedly obstructed railroad crossing, a view of which was denied to the triers of fact; serious questions involving the interpretation of Missouri law was presented; and the only reason advanced by *Giseburt* for trying the case in Illinois was to utilize the recently adopted pattern jury instructions so as to avoid frequently occurring reversals based upon improper instructions. From the foregoing, the appellate court was unable to find a single factor which justified bringing that case from Missouri to Illinois and reversed the trial court's denial of the motion to dismiss. In contrast to *Giseburt*, the same situation cannot be said to exist in the present case when the above-described litany of relevant connections between the litigation and Illinois are considered. To those connections between plaintiff, IRI, M&M and Carrier with Illinois should be added that two of the four defendants, IRI and M&M reside or have their principal offices here and all four defendants are authorized and licensed to do business in Illinois. Further, IRI and M&M did not join in the motion to dismiss and apparently concur in plaintiff's choice of forum. From the foregoing, it is evident that the requisite substantial and relevant connections between the instant litigation and this forum has been established. *American Home Assurance Co. v. Northwest Industries, Inc.*; *Sears, Roebuck & Co. v. Continental Insurance Co.*

The question then arises as to whether there are present in this case any other factors which move the balance "strongly in favor of the defendant[s] [under which] the plaintiff's choice of forum should * * * be disturbed." (*Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508, 91 L. Ed. 1055, 1062, 67 S. Ct. 839, 843.) Carrier maintains that such other factors do indeed exist: at least five important[2] outside parties would remain absent

---

· [2] At the trial level, Carrier referred to these as "necessary" parties but concedes that in the context of *forum non conveniens*, this reference was intended to mean "important" to a just resolution.

in the Illinois litigation; the trial court would be deprived of essential testimony from numerous employees of those outside parties; the court and jury would be deprived of an on-view inspection at the scene of the accident; pertinent and knowledgeable witnesses would be unnecessarily inconvenienced; the Illinois court would be required to interpret and apply South Carolina law to almost all the issues; and an additional factor determinant is that a comparison of the respective dockets in Illinois and South Carolina, in terms of delay, show a more expeditious determination available in the latter jurisdiction.

With respect to the joinder of important parties, Carrier claims that each present defendant may have at least one outside party responsible to it for any liability that it may have to Stone, none of which appears subject to the jurisdiction of Illinois, but all of which may be joined in South Carolina. Among those parties identified are Crawford, the South Carolina corporation located in South Carolina and Land-Way, a North Carolina corporation located in North Carolina, both of which are small companies whose only connection with the case was limited to work performed at Stone's South Carolina plant. Further, Carrier claims that none of its subcontractors have any connection with Illinois because Gimpel is a Pennsylvania corporation located in Pennsylvania, Automatic is a Delaware corporation located in New Jersey, and A&M is a Massachusetts corporation located in that State, all of which supplied parts for the turbine generator to be installed at Stone's South Carolina plant. Carrier also argues the possibility of other outside parties becoming relevant as discovery proceeds because the cause of action allegedly arose in South Carolina and any party could be drawn in pursuant to South Carolina's statutory "long-arm" provisions. Carrier cites *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.* (1978), 66 Ill. App. 3d 789, 383 N.E.2d 1379, for the proposition that if suit were to be pursued in Illinois, litigation in other States may and indeed must follow, which would be enough of a basis upon which to sustain the motion to dismiss for *forum non conveniens.*

■ It is clear, however, that none of the five parties identified by Carrier and Tremco are necessary to the issues raised by Stone against Carrier and Tremco in its complaint. Unlike *Mergenthaler*, all necessary defendants are amenable to Illinois jurisdiction and liability can be determined between them. In *Mergenthaler*, the Illinois court did not have injunctive jurisdiction over all defendants and therefore declined jurisdiction as to any of them. In contrast, no relief requested in the present case is beyond the power of an Illinois court to grant. In the event Carrier and Tremco are found liable to Stone, they may choose to pursue actions against potential indemnifying parties; however, they also may never need or seek such relief. The possibility of a viable action over does not

necessarily tip the scales in favor of the movants to dismiss. (See, *e.g.*, *A. E. Staley Manufacturing Co. v. Swift & Co.* (1978), 65 Ill. App. 3d 427, 432, 382 N.E.2d 667, *appeal denied* (1979), 74 Ill. 2d 585.) Neither Carrier nor Tremco will lose any right they may have to indemnity if the putative third party defendants named are not parties to this action. *Robbins Music Corp. v. Alamo Music, Inc.* (S.D.N.Y. 1954), 119 F. Supp. 29, 30-31.

■■ The argument next advanced by Carrier is that there is relatively little access to sources of proof, available process to compel unwilling witnesses to attend and the excessive costs of attaining the attendance of willing witnesses. They maintain that among witnesses having knowledge of the facts concerning the cause of the occurrence in question is an employee of Land-Way who lives in North Carolina, three employees of Crawford who participated in the installation of the sprinkler system, the possibility of others who may be employed by Gimpel, Automatic and A&M, whose identities are as yet unknown, and that IRI and M&M witnesses are not fully conversant with the necessary facts and with the occurrence itself. Stone counters that: all potential witnesses employed by parties to the action are subject to compulsory process in Illinois under Supreme Court Rule 237(b) (Ill. Rev. Stat. 1979, ch. 110A, par. 237(b)); many of the key witnesses whose testimony is essential to plaintiff's case are employed by IRI and M&M, nonmoving defendants, and located in Chicago; three persons who might not be subject to compulsory process in Illinois to which Carrier and Tremco refer are the only ones out of a total of 50 potential witnesses named by the parties who might be called to testify in Illinois but could not be compelled to appear; and as to those three, deposition testimony would be available. Stone further posits that Carrier and Tremco's fears are unsubstantiated in the record, which lacks any factual basis therefor. The only party to this litigation with more than one employee in South Carolina appears to be Stone itself, since M&M's employees are located in Chicago; IRI's employees reside in Illinois, North Carolina and Connecticut; and Carrier's potential witnesses reside in Pennsylvania, New Jersey and California. Tremco seems to be the sole defendant having personnel located in South Carolina who may testify in this lawsuit, namely, its field representative. From the foregoing considerations as to availability of witnesses, no overriding reasons emerge requiring the case to be tried in South Carolina contrary to plaintiff's choice of forum and the relevant connections of other parties and this litigation to Illinois.

■■ Also persuasive is Stone's argument that its claim against Carrier is simply that its turbine was defective because it sped out of control and the applicable safety and trip equipment did not work once a short developed. This allegation, Stone claims, is irrelevant to the issue of how water was permitted to enter the building in terms of Tremco's roof

repair negligence or the absence thereof. As Stone insists, live testimony as to how water actually entered the building and came in contact with the turbine has little to do with why the safety and trip equipment provided by Carrier failed to work. Further, Tremco's argument that it would have to try the case without the presence of certain witnesses "who are as yet unknown" is unpersuasive in view of the lengthy discovery which has already been undertaken by the parties. Dismissal pursuant to *forum non conveniens* on the mere allegation that eventually some witnesses may be found who will refuse to come to Illinois to testify finds no support in any of the authorities cited. The balance of convenience does not so strongly favor the defendants that plaintiff's choice of forum should be disturbed.

■■ Carrier asserts that because of the complexities involved in the interrelationship of the roof, sprinkler system, electrical switches and the generator, it would be essential that the jury have a view of the scene in South Carolina. Stone responds that the view of the scene would not be beneficial because it has changed since the accident, the sprinkler system having been moved, the roof having been modified and the turbine generator having acquired a new control system. Further, Stone suggests, a view would not be helpful concerning many other aspects of the case which involve blueprints, schematic diagrams and cross-section drawings necessary to show internal mechanisms which are not exposed. Stone advises that immediately after the accident hundreds of professional photographs were taken of the roof of the paper mill, the turbine room and generator, the sprinkler system as it passed by the turbine generator control valve and the various component parts of the turbine generator which are alleged to have failed, which will be available to illustrate the circumstances to the jury. We find the possibility that a view of the plant itself might be helpful under the foregoing circumstances of little dispositive persuasion; an Illinois jury will have the benefit of all necessary visual aids and tools in order to determine liability. See, *e.g.*, *A. E. Staley Mfg. Co. v. Swift & Co.*

■■ Finally, Carrier asserts that the cause was properly dismissed because South Carolina law is applicable to some of the issues raised in the complaint. Stone concedes the applicability of that law, but cites *Sears, Roebuck & Co. v. Continental Insurance Co.* as an example of the lack of persuasion for such an argument in a motion to dismiss for *forum non conveniens*. Stone argues that because in *Sears*, the contract under attack was issued and delivered in Missouri, the underlying cause of action arose in Iowa and the law applicable to the contract was either the law of Iowa or Missouri, the relevant connection between the forum and litigation was nevertheless limited to Sears' domicile in Illinois and the appellate court reversed the order dismissing the cause for *forum non conveniens* since

the application of foreign law provided no basis for granting the motion to dismiss. This argument nevertheless is the strongest advanced by Carrier and Tremco. In light of other factors and relevant connections with Illinois, however, this issue cannot be deemed dispositive, particularly with *Sears* as precedent.

■ Relying upon *Fender v. St. Louis Southwestern Ry. Co.* (1971), 49 Ill. 2d 1, 6, 273 N.E.2d 353, and *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 112-13, Carrier and Tremco argue that judicial notice can be taken of the delay in the disposition in civil cases as a ground for granting a motion to dismiss. Tremco suggests that the delay in Illinois may be as much as three or four years, whereas the delay from time of filing to time of trial in Florence County, South Carolina, the proposed site of trial, is approximately six months, based upon "information" of a deputy clerk of the latter court. Reading that information together with a statement in *Gulf Oil Corp. v. Gilbert*, which refers to administrative difficulties found in congested centers as compared with litigation which can be handled with greater facility in the jurisdiction of origin, Carrier and Tremco identify this factor as one supporting the trial court's order of dismissal. The record fails to disclose that such an argument was ever presented to the trial court in the present case, where the statistical information might have been examined and perhaps challenged. Our review is restricted to the record made in the trial court. (*In re Estate of McGaughey* (1978), 60 Ill. App. 3d 150, 157, 376 N.E.2d 259.) Assuming such an argument had been made below, however, it appears that a case filed anew in 1980 or 1981 in South Carolina will not be significantly closer to determination than the present posture of the Illinois case with extensive discovery already completed. Also to be noted is the fact that the motion to dismiss pursuant to *forum non conveniens* was made substantially after the complaint was filed in Illinois and the removal motion in the Federal court in Chicago, where trial was first sought by Carrier and Tremco.

From the foregoing it appears that Stone has sufficiently established substantial and relevant connections between the litigation and Illinois. From all that appears, at best it would be as inconvenient, vexatious, and oppressive for Stone, IRI and M&M to be forced to try this case in South Carolina as it would be for Carrier and Tremco to try it in Illinois. No factors strongly justify the removal of this cause contrary to plaintiff's choice. Accordingly, we are compelled to find that the trial court's order of dismissal was error and the discretion thus exercised must be reversed.

Reversed.

PERLIN, P. J., and DOWNING, J., concur.