JAPAX, INC., Plaintiff-Appellant, v. SODICK COMPANY LIMITED *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—88—1426

Opinion filed July 20, 1989.

Niro, Scavone, Haller, Niro & Rockey, Ltd., of Chicago (Raymond P. Niro, William L. Niro, and Robert A. Vitale, Jr., of counsel), for appellant.

Alexander, Unikel, Zalews & Tenenbaum, Ltd., of Chicago, and Marks, Murase & White, of New York, New York (Alan L. Unikel, Marvin A. Tenenbaum, Ralph J. Schumann, P. Jay Wilker, and Andrew D. Rackear, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Japax, Inc., appeals from the dismissal of its action against defendants, Sodick Company Limited (Sodick Japan) and Sodick, Inc. (Sodick USA). Sodick Japan successfully moved to dismiss the complaint against it on the ground that the Illinois trial court lacked personal jurisdiction over the Japanese corporation. Sodick USA successfully moved to dismiss the action against it on the grounds of *forum non conveniens.*

Japax contends that this court should conduct a *de novo* review of the record and reverse the orders of the trial court. Specifically, Japax argues that the trial court erred in refusing to permit Japax to take limited discovery on the jurisdictional issues and to correct misrepresentations that defendants made in their affidavits. Alternatively, Japax requests this court to hold, based upon the record, that the trial court's rulings on both the jurisdictional matter and the *fo-*

*rum non conveniens* issue were erroneous as a matter of law.
We reverse and remand.

BACKGROUND

In October 1987 Japax, a Japanese corporation, filed suit against defendants, charging them with intentional interference with contractual and business relationships, negligent interference with prospective economic advantage, unfair competition and unjust enrichment. It seeks both damages and a preliminary injunction.

The parties compete in the same business, which is the manufacture and sale or servicing of electrical discharge machinery (EDM). These machines are used to erode extremely hard metals through a series of electrical spark discharges.

Sodick USA is the wholly owned distributor of Sodick Japan. Sodick Japan manufactures its EDM systems in Japan to companies who then sell them in the United States. Sodick USA services these systems.

Japax claims that defendants misappropriated Japax's trade secrets and interfered with a distributor agreement between Japax and its exclusive United States distributor, Bridgeport Machines, Inc. This agreement provided that Bridgeport would distribute Japax's EDM equipment for a period of years. Two years before the expiration of the term of the agreement, Bridgeport informed Japax that it had conducted negotiations with Sodick Japan and would begin selling Sodick EDM systems to Japax's customers instead of Japax EDM systems.

Japax filed an emergency motion for expedited discovery seeking to develop facts to support a preliminary injunction on October 29, 1987. Sodick USA filed a memorandum in opposition to the motion on the morning of the hearing, November 2. At the time, Sodick Japan had not been served with summons. At the hearing, Sodick USA's attorney represented to the court that Sodick USA opposed the motion for expedited discovery on the basis that defendants intended to move for dismissal of the complaint for, among other things, lack of personal jurisdiction (over Sodick Japan) and failure to state a cause of action. The trial court denied the discovery motion, noting that motions to dismiss tested the sufficiency of the pleadings and as such did not require any discovery.

Three days later, Japax moved for leave to file an amended complaint alleging further facts in support of personal jurisdiction. The court allowed the motion on November 10, 1987, after which Sodick filed a form special and limited appearance. On December 8, 1987,

Sodick Japan filed a motion to quash summons for lack of personal jurisdiction and Sodick USA filed motions to dismiss on the grounds of *forum non conveniens* and failure to state a cause of action.

Japax filed memoranda in opposition to defendants' motions on January 11, 1988. On January 13 the trial court gave defendants 30 days to file memoranda in support of their motions and again denied all discovery until all defendants filed a general appearance.

Shortly thereafter, Sodick USA moved to stay the proceedings pending resolution of an arbitration proceeding between Japax and its distributor, Bridgeport, in California. At the hearing on February 25, 1988, Sodick USA appeared generally and Sodick Japan claimed to be appearing specially. The court denied the defendants' motion to stay.

The hearing on defendants' motions to dismiss Japax's complaint took place on March 21, 1988. Defendants had filed the affidavits of certain corporate officials in support of their respective motions to dismiss. The trial court granted Sodick Japan's motion to dismiss for want of personal jurisdiction and Sodick USA's motion to dismiss under *forum non conveniens*.

On April 8, 1988, Japax moved the court to reconsider its March 21 order and to compel discovery into the matters alleged in defendants' affidavits, which Japax claimed were untrue. In support of its motion Japax filed certain documents, under seal, which were court documents from another proceeding pending in the United States District Court for the Northern District of Illinois. The trial court summarily denied the motion.

Japax appeals from the orders of March 21 and April 8, 1988.

OPINION

This appeal presents two main issues: (1) does the record contain sufficient facts in support of the Illinois courts' exercise of personal jurisdiction over Sodick Japan; and (2) did the trial court properly apply the principles of *forum non conveniens* in dismissing the action against Sodick USA?

I

■ Japax asserts that Sodick Japan waived its special and limited appearance by participating in the proceedings while objecting to the court's jurisdiction over it. Both defendants used the same law firm to represent them, which did create ambiguity because the one attorney speaking for both defendants was appearing in a general capacity for one at the same time he was appearing in a "limited" ca-

pacity for the other. In fact, he argued in the initial hearing on Japax's discovery motion that it would be "profoundly unfair to require Sodick Japan *and* Sodick USA to incur the time and expense of participating in expedited discovery."

We are not prepared to conclusively find, however, that Sodick Japan waived its objections to personal jurisdiction under the facts of this case. There was an attempt to comply with the form of the special and limited appearance. Accordingly, we will move on to the determination of whether Sodick Japan's contacts with Illinois provide a sufficient base for *in personam* jurisdiction.

Japax argues that Sodick Japan should be required to defend the lawsuit in this forum because of the nature and amount of contacts it has with Illinois. In the alternative, Japax contends that the trial court abused its discretion in denying discovery into the jurisdictional facts because without such discovery Japax could not effectively counter the defendants' misleading affidavits filed in support of their motions to dismiss.

In the trial court Japax set forth three bases for jurisdiction: Sodick Japan was "doing business" in Illinois; Sodick USA is the alter ego of Sodick; and Sodick Japan's contacts directly relate to Japax's cause of action so that Illinois has jurisdiction over the transaction pursuant to the long-arm statute, section 2—209(a)(1) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—209(a)(1)).

Because we believe that the record reveals enough contacts to support the trial court's general jurisdiction under the "doing business" standard, we need not decide whether the long-arm statute applies or whether Sodick USA is the alter ego of Sodick Japan.

■■ As we noted in *Radosta v. Devil's Head Ski Lodge* (1988), 172 Ill. App. 3d 289, 293, 526 N.E.2d 561, the determination of whether a foreign corporate defendant is doing business in Illinois depends on the nature and quantity of contacts it maintains. There is no litmus test to apply, but there must be more than mere solicitation of business in Illinois. (*St. Louis-San Francisco Ry. Co. v. Gitchoff* (1977), 68 Ill. 2d 38, 369 N.E.2d 54; *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847.) Solicitation plus sales or supervisory control over distributors may be sufficient, however. (See *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252.) Similarly, if a defendant's products regularly enter Illinois in substantial amounts, jurisdiction may be justified. *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155. *Cf. Asahi Metal Industry Co. v. Superior Court* (1987), 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (California's exercise of

jurisdiction over indemnity claim between Japanese and Taiwanese manufacturers was fundamentally unfair in part because California had slight interest in the indemnity litigation; majority of court did not agree on whether defendant's mere knowledge that products likely would enter California would be sufficient minimum contacts with forum): *Wiles v. Morita Iron Works Co.* (1988), 125 Ill. 2d 144, 530 N.E.2d 1382 (Illinois jurisdiction over Japanese defendant did not comport with due process principles because record contained no evidence that defendant was aware that its distributor even had a plant in Illinois or intended to ship two products in Illinois; mere presence of the allegedly defective product in Illinois was insufficient to subject foreign manufacturer to the jurisdiction of Illinois).

The parties in the pending case sharply disagree over the nature and number of contacts that Sodick Japan had with Illinois. Sodick Japan claims that it has no offices, telephones, employees or agents in Illinois, makes no sales in Illinois, owns no property in Illinois and is connected to this State only by virtue of the fact some of its products end up here.

Japax, on the other hand, alleges that Sodick Japan sells its products directly to American companies having facilities in Illinois and indirectly sells its products to Illinois through its network of distributors. One such distributor is an Illinois company whose distributor agreement with Sodick Japan obligates the Japanese company to warrant its EDM systems and send service personnel to Illinois. Japax also alleges that Sodick Japan's controls over Sodick USA are so substantial that the subsidiary's marketing activities in Illinois can be attributed to the parent corporation. In addition, Sodick Japan is already subject to the jurisdiction of the Federal District Court for the Northern District of Illinois in pending patent lawsuits.

■ To prevail on the argument that Illinois may exercise personal jurisdiction over Sodick Japan, Japax must establish a *prima facie* showing of sufficient contacts. Conflicts in the pleadings and affidavits generally are to be resolved in favor of the plaintiff. See *Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 421 N.E.2d 231 (long-arm jurisdiction).

Listed below are the disputed contacts between Sodick Japan and Illinois:

(1.) Sodick Japan, manufacturer of EDM systems, sells them in Illinois, at least indirectly through distributors. (Sodick Japan admits that its products are sold in the United States but claims to sell them to independent distributors who sell where they please.)

(2.) Sodick Japan advertises its products in Illinois. (Sodick Japan

denies that it has ever contracted in Illinois for advertising.)

(3.) Sodick Japan directs and controls its wholly owned subsidiary, Sodick USA, and through it has many contacts with Illinois. (Defendants deny that Sodick Japan controls Sodick USA and state that Sodick USA's management conducts the company's business and makes the decisions affecting marketing, policy and work production.)

(4.) Sodick Japan has eight employees in Illinois on temporary loan to Sodick USA. (Sodick Japan claims that it does not employ any individuals in the State of Illinois.)

(5.) Sodick Japan guaranteed over $3.3 million in loans to Sodick USA, and itself loaned over $8 million to Sodick USA. (Defendants' counsel suggested to the trial court that Sodick Japan did not arrange financing for its subsidiary, but on appeal apparently concedes the fact of the loans and guarantees if not their legal significance.)

(6.) Sodick Japan has a distributor agreement with an Illinois corporation, KGK International, which is based in Illinois. Sodick Japan warrants its products and is obligated to perform certain "after-sales" services in connection with them. KGK International is contractually bound not to sell equipment that competes with Sodick Japan's EDM products. (Sodick Japan denies having an express distributorship agreement with the company, although it admits to selling EDM systems to KGK Japan, who in turn distributes them through KGK International.)

(7.) Another Sodick Japan distributor, Bridgeport, has a sales office in Illinois. Under its agreement with Bridgeport, Sodick Japan warrants its products and provides liability insurance for Bridgeport, and agrees to defend patent infringement suits brought in Illinois. (Under Sodick Japan's analysis, this is irrelevant because the Bridgeport agreement was neither negotiated nor executed in Illinois and, under the long-arm standard of transacting business, this agreement has no connection with Illinois.)[1]

■ Despite the parties' opposing characterization of the facts, we find that the record supports our determination that Sodick Ja-

---

[1]Had the court allowed discovery into the jurisdictional facts some of the conflicts may have been resolved. It is not clear, however, that Japax squarely presented the trial court with a discovery motion limited to jurisdictional facts at the appropriate time—that is, before the hearing on the motions to dismiss for lack of jurisdiction. Japax's motion to reconsider did address the need for discovery in light of certain alleged misrepresentations defendants made in the affidavits in support of their motions. The trial court expressed its disinclination to further consider its earlier ruling and apparently remained unaware of the alleged misrepresentations.

pan was doing business in Illinois. Portions of the defendants' affidavits in opposition to jurisdiction reflect personal opinion as to what "doing business" means under Illinois law. Other portions of the affidavits appear to be contradicted by information and admissions contained in documents filed in connection with other litigation pending in the Federal court.

After cutting through some of the confusion that seems to be largely matters of form rather than substance, we conclude that Sodick Japan's EDM systems do not find their way into Illinois by happenstance, on an occasional basis. The circumstances under which Sodick Japan's products come into this State are part of a plan to sell regularly in Illinois, even if the products leaving the Japanese plant are initially sold, in Japan, to intermediaries who sell in the United States. Sodick Japan's products are distributed in the Midwest by KGK International, an Illinois corporation whose office is located in Arlington Heights. Although Sodick Japan denies that it has a direct distributorship arrangement with KGK International, a full-page advertisement in a trade magazine—which invites readers to implement Sodick EDM systems—lists KGK International as the Midwestern distributor of the systems.[2]

Sodick USA, despite being set up as a separate corporate entity, functions as the service arm of Sodick Japan, maintaining the EDM systems in Illinois and other States. Evidence of record indicates that Sodick Japan maintains some control over its subsidiary, or at least maintains significant connections with it in order to facilitate the sales and servicing of its systems. For example, Sodick Japan has "loaned" employees to Sodick USA, accounting for a significant portion of USA's personnel, including its president. Many or most of Sodick USA's officers and members of the board of directors have come from Sodick Japan. Sodick Japan has loaned or guaranteed millions of dollars on behalf of its subsidiary. Employees of Sodick Japan come to the United States, including Illinois, to train Sodick USA personnel, to assist in Sodick USA's service activities and to attend trade shows. Some visit and inspect the premises of Sodick's Illinois distributor. The two companies regularly communicate and Sodick

---

[2]The record contains a copy of what purports to be an exclusive distributorship agreement between Sodick Japan and "Kanematsu Gosho Machine Tools Co., Ltd." (KGK Japan). Under the agreement, KGK Japan appoints, and Sodick approves, KGK International as the exclusive Midwestern USA distributor of the products that Sodick Japan sells to KGK Japan. The agreement lists Illinois as one of the States covered in the territory and supports the inference that Sodick Japan intended to have its products distributed in Illinois by KGK International.

USA's officers apparently report to Sodick Japan's executive managing director.[3]

While we need not determine whether Sodick USA is the alter ego of Sodick Japan for all purposes, we believe that the record contains enough links between the two companies to impute Sodick USA's marketing and servicing activities in Illinois to its parent corporation. (*Cf. People v. Parsons Co.* (1984), 122 Ill. App. 3d 590, 597-98, 461 N.E.2d 658, 664-65.) To find otherwise would allow foreign corporations to purposefully exploit local markets and reap the benefits and advantages of doing business directly while insulating themselves from lawsuits by using "separate" subsidiaries and distribution networks to implement their business activity. See *Maunder v. De-Havilland Aircraft of Canada, Ltd.* (1983), 112 Ill. App. 3d 879, 883, 445 N.E.2d 1303, 1306, *aff'd* (1984), 102 Ill. 2d 342, 466 N.E.2d 217 ("The fact that [defendant's] sales were conducted indirectly through a third party does not excuse [it] from the jurisdiction of Illinois courts"); *Colletti v. Crudele* (1988), 169 Ill. App. 3d 1068, 523 N.E.2d 1222.

Sodick Japan's citations do not support its position. For example, in *Bobka v. Cook County Hospital* (1983), 117 Ill. App. 3d 359, 361, 453 N.E.2d 828, 830, the court did state that "neither the mere presence of the product in a forum State nor the likelihood that a product will find its way into the State is sufficient to establish minimum contacts." *Bobka*, however, involved application of the "tortious act" provision of the Illinois long-arm statute. There the "transaction of business" in the forum State that led to the alleged tortious act was limited to fact that the defendants had designed, manufactured and sold an allegedly defective surgical instrument that might have been used during plaintiff's surgery. Plaintiff failed to allege that defendant had any other contracts with Illinois, such as selling or advertising its products here.

■ ■ The key to finding jurisdiction over a foreign defendant is whether it purposefully avails itself of the State's laws and benefits so that it is not unreasonable to subject it to defend a suit in that State. (See *Wiles v. Morita Iron Works*, 125 Ill. 2d 144, 530 N.E.2d

---

[3]Sodick Japan does not expressly deny all of these allegations, although it does not agree with the conclusion that it controls Sodick USA. Sodick Japan filed affidavits in support of its argument that the two companies are separate and distinct, while resisting Japax's requests for discovery. Its argument that Japax failed to establish sufficient facts to show that Sodick USA is the instrumentality of Sodick Japan is thus undercut by its strong opposition to Japax's attempts to conduct discovery into these facts.

1382; *World-Wide Volkswagon Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559.) Here, Sodick Japan certainly appears to have targeted Illinois as a State in which it intended for its products to be sold, advertised, and serviced. Unlike the Japanese defendant in *Asahi Metal Industry Co. v. Superior Court* (1987), 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026, Sodick Japan had more than mere knowledge that its products likely would end up in Illinois. The distribution scheme and advertising for its EDM systems, along with its control over the activities of Sodick USA, make it reasonable for this defendant to be subject to the Illinois courts' jurisdiction. We conclude that the trial court erred in dismissing the suit against Sodick Japan for lack of personal jurisdiction.

II

The trial court granted Sodick USA's motion to dismiss on the grounds of *forum non conveniens*, holding that Japan was a more convenient forum than Illinois because it believed that the sources of proof and the location of the witnesses would be in Japan. There was no discovery into this matter, and the court apparently took Sodick USA's argument and affidavits as undisputed fact.

■ Before dismissing a lawsuit on grounds of *forum non conveniens*, the trial court must weigh a variety of factors and conclude that the balance *strongly* favors the defendant. (*E.g., Meyers v. Bridgeport Machines Division of Textron, Inc.* (1986), 113 Ill. 2d 112, 497 N.E.2d 745.) The trial court has broad discretion in balancing the factors. (*E.g., McClain v. Illinois Central Gulf R.R. Co.* (1988), 121 Ill. 2d 278, 520 N.E.2d 368.) However, the plaintiff's choice of forum generally is entitled to extra consideration. See *Stone Container Corp. v. Industrial Risk Insurers* (1980), 91 Ill. App. 3d 807, 414 N.E.2d 1227.

■ Among the pertinent considerations are the availability of an alternative forum; ease of access to sources of proof; the availability of compulsory process for unwilling witnesses and the costs for transporting willing witnesses; the enforceability of a judgment if one is obtained; the congestion of the courts' dockets; the need to apply foreign law; the local interest in having localized controversies decided at home; and similar practical problems relating to the trial process. (*Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508-09, 91 L. Ed. 2d 1055, 1062-63, 67 S. Ct. 839, 843; *Satkowiak v. Chesapeake & Ohio Ry. Co.* (1985), 106 Ill. 2d 224, 230, 478 N.E.2d 370.

■ The record does not, in our opinion, affirmatively establish that Japan is the more convenient forum for resolution of this con-

troversy. In fact, Sodick USA admits that a "precondition to dismissal" on *forum non conveniens* grounds is the defendant's amenability to jurisdiction in an alternative forum. (See *Meyers v. Bridgeport Machines*, 113 Ill. 2d 112, 497 N.E.2d 745.) We cannot determine whether the Japanese court could and would take jurisdiction over Japax's tort complaint against Sodick USA, an American corporation located in Illinois. There is an affidavit expressing the legal opinion of a Japanese attorney that the court would take jurisdiction if Sodick USA *agreed* to submitting itself to suit in Japan. Since Sodick USA did not expressly agree we do not find this potential exercise of jurisdiction sufficient to dismiss the case.

We do not know what the sources of proof are, nor who the witnesses will be. The complaint alleges that Sodick Japan, a Japanese corporation and Sodick USA, an Illinois corporation, took certain actions that interfered in Japax's business relationship and contract with its distributor, Bridgeport Machines, which is a Connecticut corporation. The complaint sets out in detail a set of operative facts in support of several theories of liability, including negligent interference with prospective business advantage, unfair competition, and unjust enrichment. Without expressing any opinion as to whether the allegations state one or more causes of action, we nevertheless acknowledge that the legal theories advanced are recognizable in Illinois. We are unfamiliar with Japanese law and procedure and cannot determine what law the Japanese court would apply, assuming it took jurisdiction. Moreover, Japax asserts that there is no counterpart to our discovery procedures in Japan. See *Detection Systems, Inc. v. Pittway Corp.* (W.D.N.Y. 1982), 96 F.R.D 152, 156.

While evidence of the negotiations between Sodick Japan and Bridgeport might well involve documents and witnesses located outside of Illinois, that alone does not mean Japan is the more convenient forum. Documents can be transported with ease and at little expense. The expense and burden of transporting witnesses is a more difficult matter, but it appears that whatever forum is determined to be appropriate in this case, some witnesses will have to travel substantial distances. The materials in the record concerning which court has the more crowded docket do not establish that the Japanese forum would resolve the matter sooner.

We conclude that the record is insufficient for the trial court to have determined, as a matter of law, that Japan is the more convenient forum for the resolution of this controversy. Accordingly, we reverse the trial court's order which granted Sodick USA's motion to dismiss and remand for reconsideration. On remand the trial court

should allow Japax's request for discovery on the *forum non conveniens* issue.

For the foregoing reasons, we reverse the orders of the trial court which dismissed the complaint against both defendants and remand for further proceedings.

Reversed and remanded.

JIGANTI, P.J., and McMORROW, J., concur.