**LIBERTY MUTUAL FIRE INSURANCE COMPANY, a foreign corporation, Plaintiff,**

v.

**REIMER EXPRESS ENTERPRISES, LTD., n/k/a Reimer Express World Corp., a Canadian corporation, and 241197, Inc, f/k/a Pals Express, Inc., and d/b/a Pals Cartage Co. Defendants.**

**No. 99 C 1197.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 25, 2000.

Loren S. Cohen, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Chicago, IL, for Plaintiff.

Alan S. Madans, Rothschild, Barry & Myers, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Liberty Mutual Fire Insurance Company ("Liberty"), a Massachusetts corporation with its principal place of business in that state, sued the defendants for breach of contract in connection with certain unpaid insurance premiums in this diversity/alienage action. It won a default judgment against the improbably named 241197, Inc., f/k/a Pals Express, Inc., and d/b/a Pals Cartage Co. ("Pals"). Defendant Reimer Express Enterprises ("Express") and Reimer Express World Corp ("World"), Canadian corporations, moved for dismissal on the alternative grounds that a federal district court in Illinois has no personal jurisdiction, Fed.R.Civ.P. 12(b)(2), or that Liberty has failed to state a claim upon which relief can be granted. Rule 12(b)(6). The parties engaged in some jurisdictional discovery, and, after rebriefing, the motions to dismiss are denied.

### I.

The question here is whether the relationship between Pals and the Reimer defendants, Express and World, is close enough that the defendants may be said to be "doing business" in Illinois for purposes of exercising personal jurisdiction over them. Express and World are Canadian Corporations based in Winnipeg, Manitoba. World is a wholly owned subsidiary of Express, and their officers and directors are the same. Both entities are holding companies that do no business on their own. World is a "shelf" corporation that can be "activated" if an appropriate transaction arises. From 1989 to 1994, Express owned 100% of the stock of Reimer Express Enterprises America, Inc. ("Express America"), a Delaware holding corporation that also does no business of its own.

World was activated as part of a corporate restructuring in 1994, when it became Express America's corporate parent. In 1989, Express purchased 80% of the stock of Pals, a long-existing trucking company incorporated in Illinois in 1982; Express then assigned the shares or its rights to those shares under the purchase agreement to Express America, which ended up owning the Pals stock. In 1996, when Pals was in serious trouble, Express America bought the rest of the stock. Pals went out of business in 1997.

## II.

■■■ In federal court, the plaintiff has the burden of demonstrating the existence of personal jurisdiction. *Steel Warehouse of Wisconsin, Inc. v. Leach,* 154 F.3d 712, 714 (7th Cir.1998). I construe all disputed facts that bear on personal jurisdiction in the light most favorable to the plaintiffs. *Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir.1988), *superceded on other grounds by* 110 ILCS 2–209. A federal district court sitting in diversity or alienage has personal jurisdiction over a nonresident only if a court of the state in which it sits would have such jurisdiction. *Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.,* 100 F.3d 1353, 1358 (7th Cir.1996). A plaintiff can establish personal jurisdiction over a nonresident corporate defendant under Illinois law: (1) if it is doing business in Illinois with "a fair measure of permanence and continuity." *Cook Assoc., Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847, 853 (1981) (*citing Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 115 N.E. 915, 917 (1917) (Cardozo, J.)); 735 ILCS 5/2–209(b)(4); (2) if the plaintiff's claims arise out of any of the fourteen enumerated statutory grounds in 735 ILCS 5/2–209(a); (3) or "on any other basis" if the exercise of personal jurisdiction is "permitted by the Illinois Constitution and the Constitution of the United States." *Id.* 5/2–209(c); *RAR, Inc. v. Turner Diesel. Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997).

## A.

Liberty argues for personal jurisdiction solely on the state law basis that the Reimer defendants were doing business in Illinois, *see* 735 ILCS 5/2–209(b)(4). As explained below, the state and federal constitutional requirements are satisfied in virtue of the facts that satisfy the statutory "doing business" requirement. For personal jurisdiction under the "doing business" doctrine, the nonresident corporation's contacts must be "continuous, permanent, ongoing and systematic … not occasional or casual." *Milligan v. Soo Line RR, Co.,* 775 F.Supp. 277, 279 (N.D.Ill.1991) (*citing Reeves v. Baltimore & Ohio. R.R.,* 171 Ill.App.3d 1021, 122 Ill.Dec. 145, 526 N.E.2d 404, 407 (1988)). Liberty's argument boils down to the claim that Express and World were doing business in Illinois because they had enough control over Pals, which was indisputably doing business in Illinois.

The key precedent, not cited by either party, is *Japax, Inc. v. Sodick Co. Ltd.,* 186 Ill.App.3d 656, 134 Ill.Dec. 446, 542 N.E.2d 792 (1989). In *Japax,* an Illinois state court found that personal jurisdiction existed where:

> Sodick USA, despite being set up as a separate corporate entity, functions as the service arm of Sodick Japan, maintaining the EDM systems in Illinois and other states.… Sodick Japan maintains some control over its subsidiary, or at least maintains significant connections with it in order to facilitate the sales and servicing of its systems.

*Id.* at 797. The facts on which the *Japax* court relied were these:

> [1] Sodick Japan has "loaned" employees to Sodick USA, accounting for a significant portion of USA's personnel, including its president.

> [2] Many or most of Sodick USA's officers and members of the board of directors have come from Sodick Japan.

[3] Sodick Japan has loaned or guaranteed millions of dollars on behalf of its subsidiary.

[4] Employees of Sodick Japan come to the United States, including Illinois, to train Sodick USA personnel, to assist in Sodick USA's service activities and to attend trade shows. Some visit and inspect the premises of Sodick's Illinois distributor.

[5] The two companies regularly communicate[,] and

[6] Sodick USA's officers apparently report to Sodick Japan's executive managing director.

*Id.* The *Japax* court said that it was unnecessary to "determine whether Sodick USA is the alter ego of Sodick Japan for all purposes" because there were "enough links between the two companies to impute Sodick USA's marketing and servicing activities in Illinois to its parent corporation." *Id.*

■ In this case, Express and World were sufficiently involved in the management of Pals for personal jurisdiction to exist. After the share purchase, Donald, Delbert, and Gerald Reimer, members of the boards of directors of Express and World, became members of the board of Pals. Waldemar A. Redekopp, counsel for Express and World, consulted several times a year with Pals' attorney Peter Appel, giving him business advice. Appel stated that Redekopp "had to approve everything." World apparently paid Appel's legal bills after Pals went broke in 1996. Charles Pals, president of Pals, consulted with Donald Reimer and Redekopp about the purchase of some property, and Express advanced Pals money for the purchase. Express helped finance Pals' general payables and operating expenses, guaranteed payment with respect to equipment leases, and loaned Pals a good deal of money in 1992–97. World paid for vehicle insurance for Pals in 1995. Pals' books and records were reviewed by the officers and directors of Express and World. In 1996, when it appeared that Pals was in serious trouble, Redekopp sent Mr. Paul Graham, who had worked for James Reimer, an Express director, to review Pals' books and discuss the financial problems with Charles Pals. Graham was dispatched as an agent of Pals, but also in part at the request of World. Graham spent four months at Pals and reported to Ed Nieroda, director of financial services for World.

In view of these facts, most of the *Japax* factors are satisfied. The defendants "loaned" employees to Pals (Graham). Many of Pals' directors came from Express and World. The defendants loaned or guaranteed Pals a lot of money and even paid its bills. Employees of the defendants came to Illinois to consult with Pals and offer business advice. The defendants often communicated with Pals. While Pals' officers did not have to formally report to Express or World, Pals' counsel said that the defendants' attorney had to "approve everything." And World started out by owning 80% of Pals' stock and ended up by owning all of it.

The defendants dispute the strict accuracy of some of Liberty's characterization of the facts, but the differences are largely small—concerning, for example, whether it was Express or World that arranged financing for certain of Pals' expenses. In any event, in federal court, factual disagreement on a motion to dismiss must generally be resolved in favor of the plaintiff. The defendants do offer testimony that Charles Pals continued to run Pals: he testified that he needed no authorization to make his decisions and that Express and World had no significant role in the day-to-day operations of the company. But this is not inconsistent with Liberty's arguments that the defendants had enough of a role to justify exercise of personal jurisdiction. As *Japax* indicates, total control is not necessary. "Some control" or "at least significant connections" may, in certain factual situations, be enough. *See* 134 Ill.Dec. 446, 542 N.E.2d, at 797. I hold that they are enough here.

My determination is reinforced by the policy rationale presented by the Illinois

courts and the Seventh Circuit. Judge Posner explains that "the concept of 'doing business,' as it is understood in cases interpreting long-arm statutes and the due process limitations on the reach of those statutes, is that it picks out those nonresident businesses that are so like resident businesses, insofar as the benefits they derive from state services are concerned, that it would give them an undeserved competitive advantage if they could escape having to defend their actions in the local courts." *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540–541 (7th Cir.1998). In *Japax*, to find that there was no personal jurisdiction "would allow foreign corporations to purposefully exploit local markets and reap the benefits and advantages of doing business directly while insulating themselves from lawsuits by using 'separate' subsidiaries and distribution networks to implement their business activity." 134 Ill.Dec. 446, 542 N.E.2d at 797 (*citing Maunder v. DeHavilland Aircraft of Canada*, 112 Ill.App.3d 879, 68 Ill.Dec. 450, 445 N.E.2d 1303, 1306 (1983) ("The fact that [defendant's] sales were conducted indirectly through a third party does not excuse [it] from the jurisdiction of Illinois courts.")).

The defendants were "doing business" in Illinois because they had enough control over or significant connections with Pals, a company that was doing business in Illinois. They cannot insulate themselves from lawsuits in Illinois by operating through "shelf" corporations while owning from 80–100% of a corporation doing business in Illinois, paying its bills and legal fees, extending it loans and guarantees, loaning it personnel, giving it business advice and requiring approval for its activities by their own attorney.

### B.

Once it is clear that an Illinois court may exercise personal jurisdiction on statutory grounds, I must determine whether the exercise is consistent with federal due process requirements. *Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 725 (7th Cir.1994). A court in Illinois may exercise personal jurisdiction only if the defendant has "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). In view of Express and World's activities in Illinois through Pals, these requirements are satisfied.

■ The exercise of personal jurisdiction must also be consistent with the Illinois Constitution's "separate and independent" guarantee of due process. *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316 (1990). It must be "fair, just and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Id.* I must conduct an independent analysis of due process under Illinois law, but I may look to federal due process law for guidance. *Id.* Because the Reimer defendants offer no reason to otherwise construe the facts in light of the Illinois Constitution, I find that exercise of personal jurisdiction over them would not violate requirements of Illinois due process. *See Neuman*, 15 F.3d at 725.

### III.

The Reimer defendants, Express and World, also move to dismiss the contract complaint against them on the grounds that it was Pals, and not they, who held the insurance policies and was named as the insured on those policies, and who was therefore liable on any agreements concerning those policies. The complaint would have to assert some factual and legal basis for finding a policy holder's indirect parent corporation to be liable for its unpaid premiums, but, they say, Liberty has not done so. On a motion to dismiss for failure to state a claim under Fed. R. 12(b)(6), the inquiry is whether relief is possible under any set of facts consistent

with the allegations of the plaintiff's complaint. *Pokuta v. Trans World Airlines, Inc.,* 191 F.3d 834, 839 (7th Cir.1999) (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). I read a complaint liberally and accept as true its well pleaded allegations and the inferences that may be reasonably drawn from those allegations. *Sapperstein v. Hager,* 188 F.3d 852, 855 (7th Cir.1999).

 Here, Liberty has asserted that Pals was an alter ego of Express and World. If proven, that would be enough to show that they were liable for its unpaid insurance policies. Express and World protest that Liberty must allege some factual basis for this claim. This is not true. Federal notice pleading requires the plaintiff to set out its complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). A complaint need not spell out every element of a legal theory to provide notice. *Hemenway v. Peabody Coal Co.,* 159 F.3d 255, 261 (7th Cir.1998) (contrasting notice pleading with heightened pleading, i.e., "the who, what, when, where and how" required for fraud claims). A plaintiff can plead conclusions as long as those conclusions provide the defendant with minimal notice of the claim. *Jackson v. Marion County,* 66 F.3d 151, 154 (7th Cir.1995). In the ordinary case, a pleading need contain only enough "to allow the defendant[s] to understand the gravamen of the plaintiff's complaint." *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999).

The Reimer defendants do not allege that heightened pleading requirements apply here, or that they could not understand the gravamen of Liberty's complaint. They obviously do understand it. They do argue that Liberty has not alleged enough of a factual basis to show that Pals really was their alter ego. However, it does not have to. The issue on a motion to dismiss

is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims. It "may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Sapperstein,* 188 F.3d at 855 (internal quotations omitted). I do not say that the prospect of recovery appears remote or unlikely here.

I therefore D<small>ENY</small> Express and World's motions to dismiss Liberty's complaint for lack of personal jurisdiction and failure to state a claim.