**LETTER–RITE, INC., an Illinois Corporation, Plaintiff,**

v.

**COMPUTER TALK, INC., et al., Defendants.**

**No. 84 C 7076.**

United States District Court, N.D. Illinois, E.D.

Feb. 15, 1985.

Frank J. Petrie, Lewis John Craft, Assoc., Villa Park, Ill., for plaintiff.

Mark G. Krum, Stephen M. Murray, Lord Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Letter-Rite, Inc. ("Letter-Rite") brings this diversity action against Computer Talk, Inc. ("Computer Talk") for breach of contract. Computer Talk has moved under 28 U.S.C. § 1404(a) ("Section 1404(a)") to transfer this action to the United States District Court for the District of Colorado. For the reasons stated in this memorandum opinion and order, Computer Talk's motion is granted.[1]

### FACTS

Letter-Rite—a small, closely-held Illinois corporation—specializes in the production of business stationery. Early in 1980 Letter-Rite approached Computer Talk—a small, closely-held Colorado corporation—about the possible purchase of a computer-operated stenciling machine. Six months of negotiations followed, culminating in a June 30, 1980 Agreement (the "Agreement") under which Computer Talk was to develop, construct and install such a stenciling machine for Letter-Rite.

Under the Agreement Letter-Rite, at its own expense, was to send a representative to the Computer Talk factory in Colorado to observe the performance of the stenciling machine (when completed) over a two-week period of around-the-clock operation. Assuming the machine performed satisfactorily, Letter-Rite was to accept it and to take delivery F.O.B. the Computer Talk factory. Letter-Rite was then to arrange shipment of the machine to its destination in Illinois, at which point Computer Talk would arrange for proper installation. Final acceptance by Letter-Rite would follow upon satisfactory installation. Half the purchase price was due on or before acceptance at the Computer Talk factory, and the other half was to be paid in ten monthly installments beginning the month after acceptance by Letter-Rite in Colorado.[2]

Initially the Agreement called for delivery within six to eight months after the June 30, 1980 execution date. On April 25, 1981 the parties signed a modification agreement providing (among other things) (1) that failure to adhere to the original timetable would constitute no breach of the Agreement and (2) for a procedure for setting a new production schedule. It is not clear from the parties' submissions whether such a schedule was set—or what it might have been. In any case Computer Talk has yet to offer a finished product for acceptance and delivery, though it claims work on the product is substantially complete.

### Section 1404(a) Principles

Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Section 1404(a) principles are related (but not identical) to those governing forum non conveniens motions, as set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct.

---

**1.** Letter-Rite's Complaint also charges William and Tamsin Barnes ("Barneses") misrepresented Computer Talk's ability to perform its contract obligations. On October 15, 1984 all defendants moved alternatively (1) to dismiss this action for lack of jurisdiction under Fed.R.Civ.P. 12(b)(2) or (2) for transfer under Section 1404(a). On November 27 this Court concluded it lacked personal jurisdiction over Barneses. It remains then to decide the Section 1404(a) question as to Computer Talk.

**2.** Among other things, the Agreement also provided Computer Talk would train Letter-Rite personnel to use the equipment. That training was also to take place at Computer Talk's Colorado factory, and Letter-Rite was responsible for its employees' travel and living expenses.

839, 843, 91 L.Ed. 1055 (1947).[3] But at least one important difference between the two doctrines is relevant here. As characterized in *Gulf Oil,* forum non conveniens gives great weight to the plaintiff's choice of forum (*id.*):

> [U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Under Section 1404(a), though, the plaintiff's right to choose his forum does not weigh so heavily in the balance. *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955) taught Section 1404(a) was not meant simply to codify the old doctrine:

> [W]e believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.[4]

Under Section 1404(a) plaintiff's choice of forum is not an overriding consideration, but rather one of many factors to be considered. See *Rockwell International Corp. v. Eltra Corp.,* 538 F.Supp. 700, 702 (N.D.Ill.1982).

■ This opinion therefore turns to an evaluation of the facts in light of Section 1404(a)'s specific terms. Of course the parties concede this lawsuit "might have been brought" in the Colorado District Court. Venue there is proper both because all defendants reside in Colorado (28 U.S.C. § 1391(a)) and because Computer Talk is licensed to do business in Colorado and plainly transacts business there (28 U.S.C. § 1391(c)). Accordingly disposition of

Computer Talk's motion turns on a consideration of the substantive Section 1404(a) criteria: convenience of the parties and witnesses, in the interest of justice.

### 1. *Convenience of the Parties*

■ Each side's forum is really inconvenient for the other. Letter-Rite and Computer Talk are both small corporations—Letter-Rite employs 28 people, Computer Talk only 10—whose day-to-day operations are very much in the charge of their respective presidents, Russell Brewer and William Barnes. Brewer has stated on behalf of Letter-Rite (R. Brewer Aff. ¶ 10):

> My extended absence from Letter-Rite to testify, should this case be transferred to Colorado, would cause substantial loss of business to Letter-Rite and financial hardship.

Barnes, on behalf of Computer Talk, has predicted very similar consequences for that corporation if the lawsuit is tried in Illinois (W. Barnes Aff. ¶ 15):

> [M]y absence from Computer Talk in order to testify at trial in this litigation would result in a substantial inconvenience to and hardship on Computer Talk.

In addition neither Letter-Rite nor Computer Talk maintains an office outside its home state, and neither has any real business contacts in the home state of its opponent. Even the negotiations leading up to the Agreement, and the discussions since then, reflect no strong leaning toward either Illinois or Colorado. Most communications have been by telephone and mail, or during the course of brief visits by one party to the other's home state. Perhaps the only balance-tipping factor is the fact that the Agreement itself placed the pri-

---

**3.** *Gulf Oil* there enumerated a number of relevant factors:
> 1. the relative ease of access to sources of proof;
> 2. the amenability of unwilling witnesses to service of process;
> 3. the cost of attendance at trial of willing witnesses;
> 4. the relation of the community in which the courts and jurors are required to serve to the occurrence at issue in the litigation;

> 5. the accessibility of premises involved in the litigation;
> 6. the relative congestion of the court dockets and prospects for earlier trial; and
> 7. in a diversity case, the relative familiarity of the courts with the state law supplying the applicable rules of decision.

**4.** *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981) more recently reconfirmed that *Norwood* distinction.

mary burden of travel on Letter-Rite. As this opinion has already said, a Letter-Rite representative was required to travel to Colorado to accept the stenciling machine, and any training of Letter-Rite personnel in the use of the machine was to take place there.

But even if those matters could be viewed as implying Letter-Rite was less inconvenienced than Computer Talk by out-of-state dealing, they do not alone tip the balance in Computer Talk's favor. Even after *Norwood*, the plaintiff's choice of forum remains a relevant consideration—one perhaps sufficient here to balance (though certainly not to outweigh) any evidence favoring Computer Talk's position.[5]

### 2. *Convenience of the Witnesses*

■ Because the interests of the principal witnesses—Barneses and Russell and Sue Brewer ("Brewers")—so significantly overlap those of Letter-Rite and Computer Talk, the "convenience of witnesses" analysis is close to that in the preceding section. Wherever this case is tried, either Russell Brewer or William Barnes will be inconvenienced. And as the earlier discussion suggests, neither would suffer less inconvenience than the other. Each man is the president of a small closely-held corporation in which he holds the dominant (or with his wife the entire) interest, and each claims his presence is necessary to oversee day-to-day operations. To the extent either's absence impairs the functioning of his company, the consequences of the impairment are likely to fall principally on him.

As for Sue Brewer and Tamsin Barnes, the competing interests are not quite as evenly balanced. Each woman serves as corporate secretary-treasurer, though it is not clear how actively either participates in day-to-day operations. Tamsin Barnes expressly says she does not "participate in the business of Computer Talk, Inc." (T. Barnes Aff. ¶ 4), while Sue Brewer provides no description of the duties attending on her corporate office. Both of course would suffer the general inconvenience of having to travel some distance from home to testify. That would plainly be a heavy burden on Tamsin Barnes, because she is principally employed by a company unrelated to Computer Talk. It is less clear whether Sue Brewer's daily affairs—whatever they may be—merit like deference.

■ Moreover, as Computer Talk argues, Sue Brewer is not as necessary a witness as Tamsin Barnes. This Court has been provided nothing to indicate how Sue Brewer was involved in the events giving rise to the dispute between Letter-Rite and Computer Talk. She does not appear to have participated in negotiation of the Agreement or to have dealt with Computer Talk in any other way than through her husband. By contrast, Tamsin Barnes was present at many of the meetings leading up to and following the execution of the Agreement. Accordingly her inconvenience should weigh more heavily in the balance than Sue Brewer's.

### 3. *Interest of Justice*

■ In sum, then, the aggregate impact of the first two factors favors Computer Talk to some extent. Nonetheless their weighting alone does not clearly override the concept that a transfer will not be ordered "if the result is merely to shift the inconvenience from one party to another." 15 Wright, Miller & Cooper, Federal Practice & Procedure: Civil § 3848, at 246.

■ Consequently the disposition of Computer Talk's motion turns upon the "interest of justice"—a grab-bag of sorts that has come largely to encompass the factors enumerated in *Gulf Oil* (see n. 3).

---

**5.** In an odd way the inconvenience to each party of litigating on the other's home ground may favor transfer. Letter-Rite's inability to sue Barneses here might force a separate lawsuit against the individuals in Colorado so that all the issues between the parties could be resolved. In that case, retaining this suit here would create inconvenience for Computer Talk, by having to defend here, with no correlative benefit for Letter-Rite (because it would have to litigate away from home anyway).

*Associated Mills, Inc. v. Rush-Hampton Industries,* 588 F.Supp. 1164, 1167 (N.D.Ill. 1984). When those factors are taken into account the Section 1404(a) balance tips decidedly toward Computer Talk.

First, the Agreement was to be performed substantially in Colorado. While Computer Talk had an obligation to install the completed stenciling machine in Illinois, Letter-Rite was first to accept and take delivery of the equipment in Colorado. In addition Letter-Rite was responsible for shipping the completed product to its installation point. Certainly all the aspects of performance primarily at issue in this lawsuit were to take place in Colorado:

1. Both the machine itself and any documentation detailing the progress of its development and manufacture are located there.[6]

2. So too are any Computer Talk employees whose testimony may be relevant to the question of Computer Talk's efforts to meet its obligations under the Agreement.

3. Because Letter-Rite claims Computer Talk lacked the capacity to perform as contemplated by the Agreement, an examination of its production facilities in Colorado may well be appropriate.

Second, even were defendants' motion denied, this Court would appear obligated to resolve the dispute under Colorado law. Under *Klaxon Corp. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), Illinois conflict-of-law rules apply here. Illinois has traditionally looked primarily to the law of the place of performance in contract cases, but more recently there has been some evidence of movement toward a "most significant contacts" approach, akin to the approach adopted for torts cases in *Ingersoll v. Klein,* 46 Ill.2d 42, 48, 262 N.E.2d 593, 596 (1970). See *Overseas Development Disc Corp. v. Sangamo Construction Co.,* 686 F.2d 498, 510 n. 43 (7th Cir.1982); *WICO Corp. v. Willis Industries,* 567 F.Supp. 352, 355 n. 4 (N.D.Ill. 1983). Under either the older rule or some version of a more flexible bent, Colorado law should provide the rule of decision. And under *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964), the transferee court "must be obligated to apply the state law that would have been applied if there had been no change of venue." Under such circumstances, *Gulf Oil,* 330 U.S. at 509, 67 S.Ct. at 843, teaches it makes sense to hold the trial "in a forum that is at home with the state law that must govern the case."

Finally, a comparison of the dockets for the District of Colorado and the Northern District of Illinois indicates the propriety of transfer. Judges in this District have a heavier average caseload than their Colorado counterparts. More importantly, this District has consistently ranked in the top three of all District Courts nationally in terms of weighted case filings per judge (and was third nationally in that respect for the twelve months ended June 30, 1984). Statistics as to "average time from filing to disposition" are always misleading, because they deal with all types of case dispositions. More significant in real-world terms are percentages of cases over three years old, and there too this District ranks behind its Colorado counterpart. Measured in terms of docket congestion and prospects for an earlier trial, the District of Colorado is clearly the preferable forum.[7]

### Conclusion

While the convenience of the parties and witnesses favors transfer only marginally, the relevant considerations under the "interest of justice" heading weigh heavily in favor of transfer. Computer Talk's Section 1404(a) motion is therefore granted. This action is transferred to the United States District Court for the District of Colorado.

---

6. While the cost of transporting documents to Illinois may not be substantial, that evidence is plainly more accessible to a Colorado forum than to one sitting in Chicago.

7. All factual information in this paragraph has been drawn from *Federal Court Management Statistics 1984,* at 71, 109.