**Lawrence KINNEY, Plaintiff,**

v.

**ANCHORLOCK CORPORATION, a foreign corporation, Defendant.**

**No. 89 C 5348.**

United States District Court,
N.D. Illinois, E.D.

March 21, 1990.

Thomas R. Cirignani & Assoc., Thomas R. Cirignani, Daniel Slijepcivich, Chicago, Ill., for plaintiff.

Michael R. Kos, Law Offices of John M. Barnes, Chicago, Ill., for Transp. Ins. Co.

Brian W. Bell, Lawrence D. Mishkin, Wildman Harrold Allen & Dixon, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This is a diversity action in which the plaintiff, Lawrence Kinney ("Kinney"), alleges that he was injured as the result of the defective manufacture of a semi tractor-trailer driver's seat by the defendant, Anchorlock Corporation ("Anchorlock"). The plaintiff filed this suit in the Circuit Court of Cook County, Illinois, and Anchorlock subsequently removed the suit to this Court. Pending before the Court is Anchorlock's motion for change of venue pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the Court grants Anchorlock's motion and transfers the case to the Southern District of Iowa.

### II. FACTS

For purposes of the pending motion to transfer, the Court has assumed the allegations contained in Kinney's complaint to be true.

Kinney is a resident of Burlington, Iowa. In July of 1987, Kinney was employed as a truck driver by Fruehauf Corporation ("Fruehauf"). On July 27, 1987, he was driving a semi tractor-trailer on Interstate 280 near Rock Island, Illinois when he became involved in a traffic accident.

The truck which Kinney was driving at the time of the accident was equipped with a driver's seat known as a "smart seat," manufactured by the defendant, Anchorlock. Anchorlock is a Delaware corporation which maintains its principal place of business in California. Kinney alleges that when the accident occurred, the seat malfunctioned, causing him to sustain certain unspecified injuries.

In Count One of the Complaint, Kinney alleges that the seat was "unreasonably dangerous and defective"; in Count Two, he alleges that Anchorlock "carelessly and negligently designed and manufactured"

the seat. Kinney seeks damages in excess of $15,000.[1]

## III. ANALYSIS

### A. *Statutory Authority to Transfer*

■ Anchorlock has moved to transfer this suit to the Southern District of Iowa, where the plaintiffs resides, or, in the alternative, to the Central District of Illinois, where the accident in question took place and where Kinney's cause of action consequently arose. Anchorlock brings its motion under 28 U.S.C. § 1404(a), which provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Section 1404(a) presumes that venue properly lies in the judicial district in which the suit was filed. Thus, the first question posed by a motion to transfer under § 1404(a) is whether venue is in fact appropriate *both* in this district and the proposed transferee district. Only if the Court answers this question in the affirmative does it proceed to consider the convenience of the parties and their witnesses and the interest of justice. *See Waller v. Burlington Northern R. Co.*, 650 F.Supp. 988, 989–90 (N.D.Ill.1987) (Bua, J.); *Centaur Ins. Co. v. Mission Ins. Group, Inc.*, 620 F.Supp. 1492, 1494 (N.D.Ill.1985) (Bua, J.).

■ In this case, it is apparent at the outset that venue is not proper in this judicial district. 28 U.S.C. § 1391(a) identifies the districts in which a diversity suit may be maintained:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

Neither Kinney nor Anchorlock is a resident of the Northern District of Illinois. Further, although the accident giving rise to Kinney's injuries occurred within the boundaries of Illinois, that accident did not occur within this district, but within the Central District of Illinois, where Rock Island is located. Because venue does not properly lie in this district, the Court cannot proceed further under § 1404(a).

■ Nonetheless, 28 U.S.C. § 1406(a) supplies the Court with the authority to address the defect in venue:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

In this case, it would be inappropriate to consider dismissing the case when Kinney filed suit not in this Court but in the Circuit Court of Cook County, and it was the defendant who removed the action to federal court. Moreover, although it is evident that Cook County has no tie to either the parties or the cause of action in this case, Illinois law expressly permits the plaintiff to file suit in any county in the State when, as in this case, the defendant is a nonresident. *See Ill.Ann.Stat.* ch. 110, ¶ 2–101 (Smith–Hurd Supp.1989). Thus, the plaintiff took no plainly improper action which would merit dismissal.[2] *Compare Cote v.*

1. Although this amount is below the required minimum of $50,000 for diversity jurisdiction, 28 U.S.C. § 1332, Anchorlock asserted in its Notice of Removal that the amount in dispute actually exceeds $50,000. That assertion was subsequently borne out by Transportation Insurance Company's motion to intervene, in which Transportation indicated that as of September 20, 1989, it possessed a workers' compensation lien of $69,321.71 against any recovery which Kinney might obtain in this action.

2. Although, as set forth below, the Court has additionally concluded that due process does

not permit Illinois courts to exercise personal jurisdiction over the defendant, its determination that the case should be transferred rather than dismissed remains unaltered, for the Court does not deem the jurisdictional mistake "obvious". Both parties have assumed that Illinois courts could constitutionally assert personal jurisdiction over Anchorlock; moreover, Kinney's injury in Illinois constitutes an expressly enumerated jurisdictional act under the Illinois long-arm statute. *See* pages 825–27, *infra*. Kinney's case for Illinois jurisdiction fails only under due process scrutiny, and that inquiry is far from being cut and dried.

*Wadel,* 796 F.2d 981, 985 (7th Cir.1986) (dismissal an appropriate penalty for obvious mistakes). *Accord Saylor v. Dyniewski,* 836 F.2d 341, 345 (7th Cir.1988). Accordingly, the Court will proceed to determine where this case should be transferred.

## B. *The Proper Transferee Forum*

 Although the Court has concluded that § 1404(a) does not govern Anchorlock's motion to transfer, given the fact that Anchorlock has proposed two alternative transferee forums, the analysis which courts customarily apply to § 1404(a) motions is helpful in determining which of these forums is the more appropriate destination for this case. The parties disagree on this question: Anchorlock argues that the Southern District of Iowa is the preferable forum; Kinney prefers the Central District of Illinois. Applying § 1404(a) principles to this issue, the Court must first determine whether venue and personal jurisdiction properly lie in each of the proposed transferee districts, and then evaluate the extent to which each district serves the convenience of the parties and the witnesses and the interest of justice.[3]

### 1. Venue and Personal Jurisdiction in the Proposed Transferee Districts

As set forth above, venue in a diversity case properly lies in a district in which all plaintiffs or all defendants reside or in which the cause of action arose. 28 U.S.C. § 1391(a). Because the plaintiff resides in the Southern District of Iowa, venue properly lies in that judicial district. Because Kinney's cause of action arose in the Central District of Illinois, venue properly lies in that district as well.

The Court must also consider whether both the district courts in both the Southern District of Iowa and the Central District of Illinois would be able to properly assert personal jurisdiction over Anchorlock.[4] Both parties contend that Anchorlock would be subject to service of process and personal jurisdiction in either district, and for the reasons set forth below, the Court agrees with their contention.

Anchorlock does not reside within the boundaries of either the Central District of Illinois or the Southern District of Iowa. Therefore, service of process upon Anchorlock is governed by Rule 4(e) of the Federal Rules of Civil Procedure, which authorizes service of process upon a defendant which is not found within the forum state. In relevant part, this rule provides:

> Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an

---

**3.** When these factors are considered with respect to a motion to transfer under § 1404(a), the burden falls upon the movant to demonstrate that a " 'clear balance of inconvenience' " compels transfer. *Countryman v. Stein Roe & Farnham,* 681 F.Supp. 479, 481 (N.D.Ill.1987) (Williams, J.), quoting *Waites v. First Energy Leasing Corp.,* 605 F.Supp. 219, 221 (N.D.Ill. 1985) (Bua, J.). *See also Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir.1989). Because venue in this case does not properly lie in this district, however, there is no question that the case must be transferred, and thus Anchorlock is relieved of that burden. The Court must simply determine which of the proposed transferee districts best suits the interests of the parties and their witnesses as well as the interest of justice.

**4.** The parties' initial memoranda left the question of personal jurisdiction largely untouched, although Anchorlock did concede that it would be subject to service of process in the Southern District of Iowa. However, in *Hoffman v. Bla-*

*ski,* 363 U.S. 335, 242–44, 80 S.Ct. 1084, 1089–90, 4 L.Ed.2d 1254 (1960), the Supreme Court explicitly rejected such a concession as a basis for finding that personal jurisdiction over the defendant would be proper in the transferee forum:

> [T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action "might have been brought" by the plaintiff.

Although the Supreme Court's opinion in *Hoffman* expressly concerns transfer only under § 1404(a), the Court's logic applies with equal force to transfer under § 1406(a), for like § 1404(a), § 1406(a) empowers the district court to transfer a case to any district where the case "could have been brought" originally. Accordingly, the Court ordered the parties to submit supplemental briefs on the personal jurisdiction question. *See* Minute Order dated February 7, 1990.

inhabitant of or found within the state, ... service may in either case be made under the circumstances and in the manner prescribed in the statute or rule. Fed.R.Civ.P. 4(e). Pursuant to Rule 4(e), the Court must therefore inquire whether the long-arm statute of the state in which the proposed transferee court sits would supply personal jurisdiction. If the Court answers this question in the affirmative, it must next determine whether the defendant has sufficient minimum contacts with the proposed forum state such that the exercise of personal jurisdiction would comport with due process. *See, e.g., Young v. Colgate–Palmolive Co.,* 790 F.2d 567, 569 (7th Cir.1986).

■ The due process inquiry requires the Court to consider whether the defendant has engaged in purposeful contact with the forum state, such that it could reasonably expect the courts of that state to assert personal jurisdiction over it. A passage from the Supreme Court's recent opinion in *Asahi Metal Industry Co. v. Superior Court of California, Solano County* amplifies upon this inquiry:

> "[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Most recently we have reaffirmed the oft-quoted reasoning of *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), that minimum contacts must have a basis in "some acts by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S., at 475, 105 S.Ct., at 2183. "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Ibid.,* quot-

ing *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (emphasis in original).

480 U.S. 102, 108–09, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987). With this jurisprudence in mind, the Court proceeds to examine Anchorlock's contacts with both Illinois and Iowa.

### a. Anchorlock would be amenable to service of process and the exercise of personal jurisdiction in Iowa.

■ Turning first to Iowa, Anchorlock argues that it has submitted to the jurisdiction of Iowa courts by selling its products to Iowa residents. In support of this argument, Anchorlock has submitted the affidavit of Robbert Sersansie, who has been the Special Projects Manager for Anchorlock since 1982. Sersansie avers that Anchorlock sells a variety of the truck components it manufactures, including brakes, air dryers, and seats, to Fruehauf and other businesses in Iowa. Kinney contends that the transaction of business in this manner falls within the ambit of the Iowa long-arm statute, which provides in relevant part:

> If a foreign corporation makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or if such foreign corporation commits a tort in whole or in part in Iowa against a resident of Iowa, such acts shall be deemed to be doing business in Iowa by such foreign corporation under this section, and, if the corporation does not have a registered agent or agents in the state of Iowa, shall be deemed to constitute the appointment of the secretary of state of the state of Iowa to be its true and lawful attorney upon whom may be served all lawful process or original notice in actions or proceedings arising from or growing out of such contract or tort.... The making of the contract or the committing of the tort shall be deemed to be the agreement of such corporation or such person that any process or original notice so served shall be of the same legal force and

effect as if served personally upon such defendant within the state of Iowa.

Iowa Code Ann. § 617.3 (West Supp.1989). However, there is nothing in the record indicating that Anchorlock has entered into a contract to be performed in whole or in part in Iowa, nor is there anything indicating that Anchorlock has committed a tort in Iowa. Although the record does indicate that Anchorlock regularly conducts business in Iowa by selling its products to Iowa businesses, the Iowa Supreme Court has unequivocally held that such a showing is insufficient to support the exercise of personal jurisdiction under Section 617.3. *Cross v. Lightolier, Inc.*, 395 N.W.2d 844, 848 (Iowa 1986), citing *Creative Communication Consultants, Inc. v. Byers Transportation Co.*, 229 N.W.2d 266, 267–68 (Iowa 1975). Thus, on the record as it now stands, Section 617.3 would not support personal jurisdiction over Anchorlock in Iowa.

■ Nonetheless, Iowa law supplies an alternate basis for asserting personal jurisdiction over Anchorlock. Iowa Rule of Civil Procedure 56.2 provides, in relevant part:

> Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

It is well-established in Iowa jurisprudence that Rule 56.2 extends the jurisdictional reach of Iowa courts to the fullest extent permitted by due process. *E.g., Lansky by Brill v. Lansky*, 449 N.W.2d 367, 369 (Iowa 1989); *Hager v. Doubletree*, 440 N.W.2d 603, 605 (Iowa), *cert. denied*, —— U.S. ——, 110 S.Ct. 325, 107 L.Ed.2d 315 (1989). Thus, in effect, Rule 56.2 is a second long-arm statute which can provide a basis for personal jurisdiction where the narrower terms of Section 617.3 do not. *See Life v. Best Refrigerated Express, Inc.*, 443 N.W.2d 334, 336 (Iowa App.1989) (Rule 56.2

expands jurisdictional reach of Iowa courts beyond the parameters of Section 617.3); *Universal Cooperatives, Inc. v. Tasco, Inc.*, 300 N.W.2d 139, 142–44 (Iowa 1981) (determination of whether jurisdiction permitted under Rule 56.2 not dependent upon finding that there was a contract to be performed in Iowa or tort committed in Iowa as required under Section 617.3).

Because the parameters of Rule 56.2 are coextensive with the outer limits of due process, the Court need not engage in the usual two-step inquiry into whether the Rule supplies a basis for the exercise of jurisdiction and further whether such an exercise of jurisdiction comports with due process. *Compare Life*, 443 N.W.2d at 336; *BIC, Inc., Safemark Division v. Schleisman*, 443 N.W.2d 78, 80 (Iowa App. 1989). The Court need only consider whether Kinney, by its own conduct, has purposely availed itself of the privilege of conducting business in Iowa, thus rendering the exercise of jurisdiction compatible with due process. *Egli v. Egli*, 447 N.W.2d 409, 411 (Iowa App.1989); *see also Lansky*, 449 N.W.2d at 369.

Although it is evident that the due process inquiry cannot be reduced to a rigid formula, Iowa courts customarily consider five factors in assessing the constitutional propriety of personal jurisdiction:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Caesar's World, Inc. v. Spencer Foods, Inc.*, 498 F.2d 1176, 1180 (8th Cir.1974). *Accord Health Care Equalization Committee of the Iowa Chiropractic Society v. Iowa Medical Society*, 501 F.Supp. 970, 984–85 (S.D.Iowa 1980), *judgment aff'd*, 851 F.2d 1020 (8th Cir.1988).

Taking each of these factors into consideration, the Court concludes that the Iowa courts could constitutionally exercise personal jurisdiction over Anchorlock under Rule 56.2. Anchorlock's regular sales of

its products to customers in Iowa indicate that Anchorlock's contacts with the forum are not fortuitous or isolated, but systematic and purposeful. Furthermore, as the Court has already observed, Kinney's injuries allegedly were the result of a malfunctioning seat which Anchorlock delivered to Fruehauf, apparently in Iowa; thus, there is a nexus between Anchorlock's contacts with Iowa and Kinney's cause of action. Next, because Kinney is an Iowa resident, Iowa's interest in providing a forum in which its residents may seek redress for their injuries is implicated. *See Howe v. Varity Corp.*, 1989 WL 95595 at 40 (S.D. Iowa July 14, 1989) ("Iowa has a substantial interest in protecting its citizens from the acts of foreign corporations causing injury to residents of this state.") Finally, as set forth more fully below, litigating this action in Iowa serves the convenience of the parties in that both Kinney and his employer reside in Iowa and many of the significant witnesses and evidence in this action are located there. In light of all these factors, the Court concludes that Iowa has sufficient ties to Kinney's cause of action and that Anchorlock has purposefully established sufficient contacts with Iowa to support the exercise of personal jurisdiction over Kinney by the Iowa courts. *Cf. Universal Cooperatives*, 300 N.W.2d at 144.

b. *Anchorlock is not amenable to service of process and the exercise of personal jurisdiction in the Central District of Illinois.*

■ Turning now to Illinois, the Court again looks first to the state's long-arm statute. In relevant part, the Illinois statute provides:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> . . . . .
>
> (2) The commission of a tortious act within this State;
>
> . . . . .

*Ill.Ann.Stat.* ch. 110, ¶ 2–209(a) (Smith–Hurd Supp.1989). As the Seventh Circuit has explained, determining whether the Illinois long-arm statute confers personal jurisdiction over the defendant typically requires a court to answer two questions: (1) whether the defendant has engaged in one of the jurisdictional acts enumerated in the statute, and (2) whether the defendant's contact with Illinois are sufficient to satisfy the requirements of due process. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir.1990). On occasion, the first inquiry has been restated to incorporate two considerations: first, whether the defendant has engaged in an enumerated jurisdictional act, and second, whether the plaintiff's cause of action arises from that act. *See John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 402 (7th Cir.1987); *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 590 (7th Cir.1984).[5]

With respect to the first inquiry, "[i]t is well established that for purposes of the

---

5. A "catch-all" provision has recently been added to the Illinois long-arm statute providing that "a court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." Act of Aug. 19, 1981, P.A. 86–840, sec. 1, § 2–209(c), 1989 Ill.Legis.Serv. 4069, 4070 (West) (effective September 7, 1989). The Seventh Circuit Court of Appeals has construed this provision to render the jurisdictional reach of Illinois courts co-extensive with the outer limits of due process. *Varonos*, 892 F.2d at 1310 n. 5; *see also L.B. Foster Co. v. Railroad Service, Inc.*, 734 F.Supp. 818, 820–22 (N.D.Ill. 1990) (Rovner, J.) Consequently, the multi-step

inquiry outlined in *Varonos, John Walker & Sons*, and *Jacobs/Kahan* is no longer necessary, for if the requirements of due process have been satisfied, so have the requirements of the Illinois long-arm statute. *See Varonos*, 892 F.2d at 1310 n. 5; *L.B. Foster*, 734 F.Supp. at 822. Conversely, if the requirements of due process have not been satisfied, personal jurisdiction is wanting and satisfaction of the long-arm statute is irrelevant. Nonetheless, the Court has engaged in that multi-step analysis here to demonstrate that although Anchorlock has allegedly committed a jurisdictional act specifically identified in § 2–209(a), that act turns out to be insufficient to satisfy the requirements of due process.

Illinois 'long-arm' statute a tort is committed in the place where the injury occurs." *McBreen v. Beech Aircraft Corp.*, 543 F.2d 26, 28 (7th Cir.1976); *see also Yates v. Muir*, 112 Ill.2d 205, 208–09, 492 N.E.2d 1267, 1268, 97 Ill.Dec. 394, 395 (1986). Kinney has alleged that Anchorlock's improper manufacture of the smart seat in his truck caused him to be injured in Illinois. Thus, Anchorlock has engaged in a jurisdictional act for purposes of the long-arm statute, by having allegedly committed a tort in Illinois. *See Payne v. AHFI Netherlands, B.V.*, 482 F.Supp. 1158, 1161 (N.D.Ill.1980) (Bua, J.); *Bolf v. Wise*, 119 Ill.App.2d 203, 207, 210, 255 N.E.2d 511, 512, 513–14 (2d Dist.1970). At the same time, Kinney's cause of action arises from that jurisdictional act. Thus, the criteria for the exercise of personal jurisdiction under the Illinois long-arm statute have been satisfied, and only the due process inquiry remains.

■ On the record presently before the Court, the results of that inquiry are troublesome. Both parties appear to assume that because Kinney has alleged that Anchorlock has committed a tort in Illinois, the requirements of due process have been satisfied. The Court cannot concur in this reasoning. Due process requires that a defendant itself have taken action which gives rise to a substantial connection with the forum state. *Asahi, supra*, 480 U.S. 102, 108–09, 107 S.Ct. at 1031. It may be that Anchorlock has engaged in conduct, such as the purposeful sale of its products to Illinois businesses, which would create a substantial enough connection with Illinois to justify the exercise of personal jurisdiction over Anchorlock by the Illinois courts. However, the record in this case does not reflect such activity. The sole contact of Anchorlock with Illinois which the parties have proffered as a basis for jurisdiction is Kinney's injury in Illinois from an Anchorlock product. From Mr. Sersansie's affidavit and the parties' briefing, it does not appear that Anchorlock manufactured the "smart seat" in Illinois, nor does it appear that Anchorlock sold the seat to Fruehauf either in Illinois or for anticipated use in Illinois. These circumstances are plainly insufficient to satisfy the requirements of due process and to properly confer jurisdiction upon the Illinois courts. Anchorlock's "smart seat" ended up in Illinois not through any act of its own, but solely through the acts of Kinney and his employer. Perhaps this was foreseeable to Anchorlock. Nonetheless, the foreseeable possibility that a third party might take an Anchorlock product into Illinois and suffer injury from the product there does not establish the minimal contacts with Illinois required by due process; only Anchorlock's own purposeful conduct can satisfy this requirement. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–29, 100 S.Ct. 559, 566–68, 62 L.Ed.2d 490 (1980); *see also Asahi*, 480 U.S. 102, 112–13, 107 S.Ct. at 1033. Nothing on the record in this case indicates that Anchorlock has attempted to market its products in Illinois or to otherwise purposefully avail itself of the opportunity to transact business in Illinois. *See World–Wide Volkswagen*, 444 U.S. at 297–98, 100 S.Ct. at 567. *Compare Wiles v. Morita Iron Works Co.*, 125 Ill.2d 144, 530 N.E.2d 1382, 125 Ill.Dec. 812 (1988) (exercise of personal jurisdiction over foreign corporation would violate due process where, although plaintiff was injured by corporation's product in Illinois, there was no evidence that corporation was aware its product was being shipped to Illinois), *with Japax, Inc. v. Sodick Co.*, 186 Ill.App.3d 656, 666, 542 N.E.2d 792, 798, 134 Ill.Dec. 446, 452 (1st Dist.1989) (exercise of personal jurisdiction over foreign corporation proper where record revealed that corporation intended that its products be sold, advertised, and serviced in Illinois, and corporation thus had more than mere knowledge that its product might end up in Illinois). Therefore, the Court cannot conclude on the present record that Anchorlock's contacts with Illinois are sufficient to permit the District Court for the Central District of Illinois to constitutionally exercise personal jurisdiction over Anchorlock.

■ The Court reaches this conclusion even though objections to the exercise of personal jurisdiction can be waived. *See Heller Financial, Inc. v. Midwhey Powder*

Co., Inc., 883 F.2d 1286, 1290 (7th Cir. 1989); *Curtis Management Group, Inc. v. Academy of Motion Picture Arts and Sciences,* 717 F.Supp. 1362, 1374 (S.D.Ind. 1989). By filing its appearance and answer to Kinney's complaint upon removal of the case from the Circuit Court of Cook County without voicing any doubts as to the matter of personal jurisdiction, Anchorlock might be deemed to have waived any objection it could have made to the jurisdiction of this Court. *Levine v. Arnold Transit Co.,* 459 F.Supp. 233, 234 (N.D.Ill.1978) (Will, J.).[6] And perhaps one could argue that by failing to object to the exercise of personal jurisdiction by one Illinois Court (this Court), Anchorlock has waived any objection it could make to the exercise of personal jurisdiction by any other Illinois court, including the District Court for the Central District of Illinois. However, such bootstrap reasoning is impermissible in light of the Supreme Court's opinion in *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). *See supra* at 4 n. 3. The Court in *Hoffman* rejected the defendants' argument that the provision of § 1404(a) permitting transfer of a case to any district "where it might have been brought," a phrase echoed in § 1406(a), could be interpreted to mean "where it may now be re-brought, with defendants' consent." 363 U.S. at 342–43, 80 S.Ct. at 1089. Taking guidance from the unambiguous language of the statute, the Court reasoned that a district court is empowered to transfer a case only to another district in which the plaintiff might have filed it *originally.* 363 U.S. at 343, 80 S.Ct. at 1089; *see also Morales v. Navieras de Puerto Rico,* 713 F.Supp. 711, 712 (S.D.N.Y.1989). Thus, the court can transfer a case to another district only if the defendant was subject to personal jurisdiction in that district when the suit was first filed; *subsequent* actions on the part of the defendant which may give rise to personal jurisdiction in that district are beyond the court's power to consider. 363 U.S. at 343, 80 S.Ct. at 1089. In this case, Anchorlock's consent to the exercise of personal jurisdiction by Illinois courts was given after Kinney filed suit. However, focusing as it must solely upon the state of affairs when Kinney first filed suit, the Court finds the record devoid of any basis to support personal jurisdiction over Anchorlock in Illinois. Accordingly, the Court cannot further consider the Central District of Illinois as an alternate transferee forum.

2. The convenience of the parties and the witnesses, and the interest of justice.

The Court's conclusion that Anchorlock would not be subject to personal jurisdiction in the Central District of Illinois has eliminated the choice between the two forums proposed by Anchorlock and left the Southern District of Iowa as the only jurisdictionally viable forum proposed. Nonetheless, before transferring the case to that district, the Court deems it appropriate to consider whether the convenience of the parties and the witnesses and the interest of justice would be served by such a transfer, particularly in view of Kinney's opposition to transfer of the case to Iowa.[7] Moreover, although the Court has concluded that Illinois is an inappropriate forum for this action on personal jurisdiction ground, in view of Kinney's preference to litigate the case in Illinois, the Court has used Illinois as a benchmark in assessing the propriety of the Southern District of Iowa as a transferee forum. As set forth

---

6. Indeed, when the Court requested further briefing on the matter of personal jurisdiction in both of the proposed transferee districts, *see* n. 4, *supra,* Anchorlock again expressed no doubts about the personal jurisdiction of Illinois courts.

7. The Court notes that even without Anchorlock's waiver as to the personal jurisdiction of this Court, it would nonetheless be appropriate for the Court to consider the merits of the motion to transfer. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962) (§ 1406 authorizes transfer "whether the court in which it was filed had personal jurisdiction over the defendants or not"); *Hapaniewski v. City of Chicago,* 883 F.2d 576, 579 (7th Cir.1989) ("personal jurisdiction over the defendant is not a prerequisite for district courts to utilize the transfer provision in § 1406(a)"), *cert. denied,* —— U.S. ——, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990).

below, after considering the relevant interests, the Court concludes that these interests would in fact be served by transfer to the Southern District of Iowa.[8]

### a. *Convenience of the parties*[9]

Transfer to the Southern District of Iowa unquestionably would be advantageous for Kinney. Kinney resides in the Southern District of Iowa, and thus transfer to that judicial district would spare him the inconvenience of coordinating with Chicago counsel and, ultimately, of traveling to Chicago for trial or for other court appearances. As to Anchorlock, the advantage is not so apparent, in view of the fact that Anchorlock's principal place of business is in California. Nonetheless, traveling to Iowa is no more burdensome than traveling to Illinois, and certainly the record as it stands reflects more contacts on Anchorlock's part with Iowa than with Illinois. More importantly, as set forth below, many of the relevant witnesses and much of the

evidence are located in or near the Southern District of Iowa; therefore, transfer to that district makes the case less costly to litigate for both Kinney and Anchorlock. In view of these factors, the Court finds that transfer to the Southern District of Iowa would serve the convenience of the parties.[10]

### b. *Convenience of the witnesses*

With the benefit of discovery, Anchorlock has identified five individuals who are potential witnesses on its behalf and indicated that there are some as yet unnamed employees of Fruehauf who might also testify on its behalf. All of these witnesses reside in the Southern District of Iowa. Anchorlock has also identified three individuals who are likely to be witnesses on behalf of Kinney. One of these individuals lives in the Southern District of Iowa. Another lives in Carman, Illinois, a small town close to the western border of Illinois and near Burlington, Iowa. The third lives in

---

**8.** The Court might also consider transferring the case to the appropriate judicial district in either Delaware or California. Under 28 U.S.C. § 1391(a) venue is proper in the judicial district in which the defendant resides; and pursuant to the 1988 revision to § 1391(c), Anchorlock is considered to be a resident of any district in which it is subject to personal jurisdiction. *See* Commentary, 28 U.S.C.A. § 1391(c) (West Supp. 1989). Anchorlock is incorporated in Delaware, and has its principal place of business in California. Thus, it is unquestionably subject to personal jurisdiction in either state. Yet, transferring the case to Delaware would no doubt impose a significant burden upon Kinney, and given that Anchorlock's principal place of business is in California, it might impose a significant burden upon Anchorlock as well. Moreover, Delaware has absolutely no ties to any of the witnesses or the cause of action in this case. On the other hand, although transferring the case to California would be convenient for Anchorlock, and might make certain evidence regarding the manufacture of Anchorlock's products more accessible to the parties, it would impose a significant burden upon both Kinney and upon most if not all of the witnesses, who live in the Midwest. Accordingly, the Court does not deem transfer to either of these alternate forums worth pursuing.

**9.** The Court has not considered how transfer affects the convenience of Transportation Insurance Company ("Transportation"), which the Court permitted to intervene without objection on January 18, 1990. Transportation moved to

intervene after Anchorlock's motion to transfer was initially briefed, and was thus on notice of the possibility of transfer at the time it moved to intervene. Moreover, Transportation intervened solely on the basis of a worker's compensation lien which it holds against any recovery Kinney may obtain in this action. *See* n. 1, *supra.* Thus, Transportation's role in this case is not likely to be substantial, nor are the burdens imposed upon it, if any, by the transfer.

**10.** The Court has not forgotten that Illinois was the forum that Kinney selected for pursuit of his claim. Kinney is correct in contending that the plaintiff's choice of forum has traditionally been accorded substantial weight. *Trademasters International, Inc. v. Borer,* 687 F.Supp. 434, 435 (N.D.Ill.1988) (Bua, J.); *Ronco, Inc. v. Plastics, Inc.,* 539 F.Supp. 391, 401 (N.D.Ill.1982) (Marshall, J.). Nonetheless, the absence of evidence that Anchorlock has engaged in sufficient purposeful conduct in Illinois to permit the constitutional exercise of jurisdiction over it renders Kinney's choice of forum untenable. That point aside, in modern transfer jurisprudence the plaintiff's choice of forum commands less deference than it did under common law forum non conveniens analysis. *Trademasters,* 687 F.Supp. at 435; *Countryman v. Stein Roe & Farnham,* 681 F.Supp. 479, 482 (Williams, J.). This is particularly so when, as is true here, the plaintiff does not reside in his chosen forum. *Id.* With the added consideration that Kinney himself resides in the proposed transferee forum, the Court has no difficulty in overruling the plaintiff's choice of forum in this case.

**829**

Kahoka, Missouri. All three of these individuals reside relatively close to Keokuk, Iowa, where the District Court for the Southern District of Iowa, Eastern Division, is seated. Based upon this roster of potential witnesses and their residences, Anchorlock contends that a transfer to the Southern District of Iowa would further the convenience of the witnesses in this case.

In response, Kinney names no witnesses of his own, and does not argue that any of the witnesses whom Anchorlock has identified are not in fact likely witnesses or that transfer of the case to the Southern District of Iowa would not be convenient for them. Rather, Kinney argues that he may ultimately identify experts and other witnesses who do not reside in that district, and whose convenience would not particularly be served by transferring the case.

Kinney's argument is one of speculation only, and the Court declines to give it significant weight. Of the potential witnesses identified to date, which include the plaintiff, his physicians, an eyewitness to the accident, and other Fruehauf employees, all but two reside within the Southern District of Iowa. Even for these two witnesses, the Southern District of Iowa is within a short distance. Kinney has not demonstrated that there is a sufficient likelihood that other witnesses will be identified for whom traveling to the Southern District of Iowa would be unduly burdensome. Under these circumstances, the Court concludes that the convenience of the witnesses warrants transfer to the Southern District of Iowa.

#### c. Interest of Justice

The "interest of justice" prong of transfer analysis has been characterized as "a grab-bag of sorts," for the most part incorporating the factors which the Supreme Court identified for consideration under the common law doctrine of forum non conveniens in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). *Letter–Rite, Inc. v. Computer Talk, Inc.*, 605 F.Supp. 717, 721 (N.D.Ill. 1985) (Shadur, J.). These factors include the following:

1. the relative ease of access to sources of proof;
2. the amenability of unwilling witnesses to service of process;
3. the cost of attendance at trial of willing witnesses;
4. the relation of the community in which the courts and jurors are required to serve to the occurrence at issue in the litigation;
5. the accessibility of premises involved in the litigation;
6. the relative congestion of the court dockets and prospects for an earlier trial; and
7. in a diversity case, the relative familiarity of the courts with the state law supplying the applicable rules of decision.

*Letter–Rite*, 605 F.Supp. at 720, n. 3. *See also Heller Financial, Inc. v. Midwhey Powder Co., supra*, 883 F.2d at 1293 ("[t]he 'interest[s] of justice' include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case"). Taking each of these factors into account leads the Court to conclude that the interest of justice favors transfer to the Southern District of Iowa.

The parties have not discussed at any great length the accessibility of relevant documentary or other non-witness evidence, and neither party has identified a physical premise which requires inspection. Anchorlock has asserted that the bulk of relevant documentary evidence, including the plaintiff's medical and employment records as well as maintenance records, are located in the Southern District of Iowa. However, Anchorlock has not suggested that this evidence is voluminous, and in an age when photocopiers and facsimile machines abound, the physical location of documents has lost much of its significance. *See Associated Mills, Inc. v. Rush–Hampton Industries, Inc.*, 588 F.Supp. 1164, 1166–67 (N.D.Ill.1984) (Shadur, J.)

Neither party has argued that any witness would be reluctant to testify at trial. Thus, the amenability of the witnesses to

service of process does not presently seem to be of great import. The Court notes, however, that only one of the potential witnesses, Robert Kaletsch, lives within Illinois, and he resides at the Iowa border in Carman, Illinois. Thus, assuming this case proceeds to trial, conduct of the trial in Keokuk, Iowa would be more convenient for Mr. Kaletsch than it would be in either Chicago or the Central District of Illinois at Rock Island. Consequently, it is perhaps less likely that Mr. Kaletsch would be a reluctant witness were the case to proceed to trial in Iowa. In any case, it appears that Carman is within the 100–mile reach of the Iowa district court's subpoena power under Federal Rule of Civil Procedure 45(e)(1). At the same time, the Iowa court, unlike the courts of Illinois, would enjoy the benefit of subpoena power over most of the other witnesses. Thus, on balance, a transfer would seem favorable in terms of the Iowa court's subpoena power.

Even if the Court assumes that use of the subpoena power will be unnecessary, a transfer to Iowa nonetheless would be advantageous with respect to the attendance of witnesses. Because all of the witnesses identified to date live either within the Southern District of Iowa or close to it, holding the trial in Iowa would be less costly for both the witnesses and the parties.

As to the community interest in this litigation, Iowa's ties appear to be significant. Kinney is an Iowa resident, was driving for an Iowa employer at the time of the accident, and was allegedly injured by a product which Anchorlock sold to Fruehauf in Iowa as it has to other Iowa businesses. In contrast, Illinois' only tie to this case lies in the scene of the accident. In this Court's view, that single tie is not sufficient to confer upon Illinois a greater stake in Kinney's cause of action.

However, Kinney contends that this tie is sufficient to render Illinois law the source of substantive law governing this action. Indeed, this appears to be the source of Kinney's greatest concern with respect to a transfer to Iowa. In other words, Kinney appears to fear that if this case is transferred to Iowa, the federal court in Iowa will look to Iowa jurisprudence for guidance on any substantive questions, and that Iowa law might not be as favorable to him as Illinois law. However, a federal court sitting in diversity does not automatically apply the substantive law of the forum state, and thus Anchorlock is quite correct in asserting that neither this Court nor the District Court for the Central District of Illinois would necessarily look to Illinois law.

■ Were this Court to pass upon the question of which state's substantive law governs, for example, it would first look to Illinois' choice of law rules. *See Klaxon Corp. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941) (federal court sitting in diversity applies choice of law principles of forum state); *U.S. Fire Ins. Co. v. Beltmann North American Co.,* 883 F.2d 564, 565–66 (7th Cir.1989) (same). Applying Illinois' "most significant contacts" test, the Court might conclude that the substantive law of Illinois would govern this action, consistent with the presumption that the law of the state where the plaintiff's injury occurred should govern the rights and liabilities of the parties involved. *See, e.g., French v. Beatrice Foods Co.,* 854 F.2d 964, 966 (7th Cir.1988); *Pittway Corp. v. Lockheed Aircraft Corp.,* 641 F.2d 524, 526 (7th Cir. 1981). On the other hand, the Court might conclude that Iowa or yet another state has a more substantial nexus to the parties and to Kinney's cause of action, based upon such factors as the location where the conduct giving rise to Kinney's injury took place, Kinney's residence and Anchorlock's place of incorporation and principal place of business, and the place where the relationship between Anchorlock and Kinney or Anchorlock and Fruehauf, Kinney's employer and the purchaser of the "smart seat", is centered. *See id.* at 526–27. The Court might therefore conclude that Illinois law should not apply. Furthermore, the District Court for the Southern District of Iowa would engage in the same sort of analysis under Iowa law. *See Weaver v. Nash International, Inc.,* 562 F.Supp. 860, 862–63 (S.D.Iowa 1983), *judgment aff'd,*

730 F.2d 547 (8th Cir.1984).[11] Of course, this Court means to express no opinion as to how this issue should actually be resolved, and has merely outlined the analysis to demonstrate that it is not a certainty that Illinois substantive law would govern his case even if the case were to remain in Illinois. Indeed, the undeveloped state of the record on this question precludes such a determination at this stage of the litigation. In any case, Kinney enjoys no intrinsic advantage as to the governing substantive law by litigating his case in an Illinois forum. Furthermore, because the question as to which body of substantive law governs remains unresolved, it weighs neither for nor against transfer to any given forum. *Zurich Ins. Co. v. Raymark Industries, Inc.,* 672 F.Supp. 1102, 1104 n. 1 (N.D.Ill.1987) (Bua, J.).

Moreover, even if the Court were to assume that Illinois law should govern this action, that assumption would not weigh heavily against transfer under the circumstances of this case. Although this Court and the District Court for the Central District of Illinois may have the benefit of a greater familiarity with Illinois law, the breadth of the federal docket requires every district judge to venture into the substantive law of other forums on a regular basis. Thus, this Court can properly assume that the District Court for the Southern District of Iowa is fully competent to ascertain, interpret, and apply the relevant provisions of Illinois law to this case should that be necessary. *See Peterson v. United States Steel Corp.,* 624 F.Supp. 44, 46 (N.D.Ill.1985) (Nordberg, J.).

Finally, the Court takes note of the docket condition of the District Court for the Southern District of Iowa. The average number of weighted filings is generally considered the most telling statistic in terms of docket congestion. *Letter–Rite, supra,* 605 F.Supp. at 722. For the twelve-month period ended June 30, 1989, that figure was 457 for the Southern District of Iowa; in contrast, the number was 436 for the Central District of Illinois and 603 for this district. *Federal Court Management Statistics 1989* at 101, 102, and 114. The Court further observes that the median time for a civil suit to reach trial is 14 months in the Southern District of Iowa, as compared to 19 months in the Central District of Illinois and 15 months in the Northern District. *Id. See also Espino v. Top Draw Freight System, Inc.,* 713 F.Supp. 1243, 1245 (N.D.Ill.1989) (Alesia, J.) ("the Northern District of Illinois consistently ranks near the top of the most congested district courts nationally"). On balance, these figures indicate that Kinney will not be disadvantaged with respect to the speedy resolution of his claim if the case is transferred to the Southern District of Iowa.

Having looked to each of the factors in the "interest of justice" grab-bag, the Court concludes that these factors tilt in favor of transferring the case to the Southern District of Iowa.

## IV. CONCLUSION

For the reasons set forth above, the Court has concluded that the absence of proper venue and personal jurisdiction in the Northern District of Illinois, considered together with the convenience of the parties and the witnesses and the interest of

---

**11.** Had venue been proper in the Northern District of Illinois under § 1391(a) but the Court nevertheless determined that transfer to the Southern District of Iowa was appropriate, the District Court for the Southern District of Iowa would apply *Illinois* choice of law rules to determine which state's substantive law applies. *See Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964); *Leonardo's Inc. v. Greathall, Ltd.,* 714 F.Supp. 949, 955 (N.D.Ill.1989) (Duff, J.); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure:* *Jurisdiction 2d* § 3846 at 364 (1986). *See also Ferens v. John Deere Co.,* —— U.S. ——, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). However, because venue does not properly lie in this judicial district, the Southern District of Iowa will apply *Iowa* conflict of law principles, just as if the case had been filed in that district in the first instance. Wright, Miller & Cooper at 364–66. Nonetheless, as the Court has noted above, the analysis which Iowa courts apply does not differ significantly from that which Illinois courts apply.

justice, require this case to be transferred to the Southern District of Iowa.